[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
In this case, the plaintiff, Dr. Bonnie S. Handler, has sued the defendants, Richard Arends, Dean of the School of Education and Professional Studies ("School of Education") at Central Connecticut State University ("CCSU"), and Lawrence Klein, a professor at CCSU, for defamation and invasion of privacy in connection with the writing and distribution by Arends and the reading at a departmental meeting by Klein of a letter concerning CCSU's denial of the plaintiff's application for tenure. In her revised, five-count complaint dated January 11, 1994 ("Revised Complaint" or "R.C."), the plaintiff alleges that the defendants' challenged conduct took place under the following circumstances.
In 1985, the plaintiff was hired by CCSU as an assistant professor in the School of Education. R.C., Count I, ¶ 4. While in the employ of CCSU, she received "commendable" annual performance evaluations in the areas of teaching, publication and service to the University, Id., and earned the respect of her colleagues for her professional achievement and service alike.Id., ¶ 5. In 1991, the plaintiff became eligible both for promotion to the rank of associate professor and for tenure. Id.,
¶ 6. Pursuant to CCSU standards, as set forth in the Collective Bargaining Agreement, the criteria for promotion and tenure were the same. Id., ¶ 7. After the evaluation procedure for promotion and tenure was completed, CCSU President John W. Shumaker "granted" the plaintiff promotion to associate professor but "denied" her tenure. Id., ¶ 8. In so doing, "President Shumaker told [the plaintiff] that the decision to deny her tenure was based on budgetary concerns, but that she deserved the promotion due to her superior academic achievement." Id., ¶ 9. Neither President Shumaker nor the plaintiff publicly disclosed that the plaintiff had been denied tenure. Id., ¶ 10.
In February of 1992, the plaintiff was chosen by her colleagues in the Department of Teacher Education to serve as Chair of the Department's Appointments Committee. Id., Count III, ¶ 6. Shortly thereafter, defendant Arends asked the plaintiff to resign as Chair of the Appointments Committee, Id., ¶ 7, then, on or about February 12, 1992, wrote the memorandum here at issue to CT Page 1823 "numerous colleagues [of the plaintiff] and members of [her] department." Id., ¶ 8.
In his memorandum, Arends allegedly disclosed "that the plaintiff was in the process of leaving the [U]niversity and that [she] had been non-renewed [,]" Id., ¶ 12, "recommended that [she] be removed as Chair of the Appointments Committee[,]" Id., ¶ 9, and "stated that [her] actions had resulted in rancor in the department." Id., ¶ 10. The memorandum did not explain that the only reason for the plaintiff's denial of tenure was budgetary.Id., ¶ 13.
Later in February of 1992, after defendant Arends distributed his memorandum, defendant Klein publicly read the memorandum to certain of the plaintiff's colleagues in a CCSU departmental meeting. Id., Count I, ¶ 11. In so doing, defendant Klein "did not inform [the plaintiff's] colleagues and the public generally that the failure to grant tenure was based solely on budgetary concerns." Id., ¶ 14.
In the first count of her Revised Complaint, the plaintiff alleges that by reading defendant Arends' memorandum at the departmental meeting, defendant Klein disclosed to those present and to the public generally that she had been denied tenure, and thereby invaded her privacy. His conduct, she claims, is actionable as an invasion of privacy because it gave unreasonable publicity to matters concerning her private life which the public had no right to know. Id., ¶¶ 13, 15, 16.
The second and third counts of the plaintiff's Revised Complaint both allege defamation against defendant Arends. In the second count, the plaintiff claims that Arends defamed her when Klein read his memorandum aloud at the aforementioned departmental meeting, and thereby disclosed to those present that she had been denied tenure without also informing them that said denial was based solely upon budgetary concerns. Id., Count II, ¶ 14. Such statements, she claims, were defamatory because they could reasonably have been understood to indicate that the plaintiff's denial of tenure was "for other than budgetary concerns." Id.,
¶ 15. Similarly, the third count claims that Arends defamed the plaintiff by writing the subject memorandum, then distributing it to members of the plaintiff's department. The memorandum, so written and published, is claimed to have defamed the plaintiff in two ways: first, as previously alleged in Count Two, by revealing that she had been denied tenure without also disclosing that said CT Page 1824 denial was for budgetary reasons only; and second, by stating that her actions had resulted in rancor in her department, and thereby suggesting that she was incapable of working with her colleagues. Id., Count III, ¶¶ 10-14.
In the fourth and fifth counts of her Revised Complaint, the plaintiff alleges that each of the defendants, by his aforedescribed conduct, invaded her privacy by publicizing information about her which placed her in a false light before the public. Count Four is directed to defendant Arends. Count Five is directed to defendant Klein. Both defendants are claimed to have placed the plaintiff in a false light by disclosing that she was denied tenure without also disclosing that said denial was only for budgetary reasons. To be implied from this partial disclosure was the misleading conclusion that the plaintiff was unqualified for a tenured position at CCSU. Id., Count IV, ¶ 18, Count V, ¶ 19. In addition, both defendants are claimed to have placed the plaintiff in a false light by stating that she had caused rancor in her department. This statement, claims the plaintiff, falsely portrayed her as "a troublesome person who was unable to maintain relations with or otherwise work with her colleagues." Id., Count IV, ¶ 19.
The defendants have answered the plaintiff's Revised Complaint, inter alia, as follows: Initially, they admit the following facts concerning the plaintiff's employment by CCSU, her application for promotion and tenure and the University's response thereto: that she was employed by CCSU as an assistant professor in the Department of Teacher Education from 1985-1991; Answer and Special Defenses ("Answer"), Count I, ¶ 4; that by 1991, she had become eligible for promotion to associate professor and tenure;Id., ¶ 6, that President Shumaker's recommendation to the CCSU Board of Trustees was that she be promoted to the rank of associate professor but that she not be granted tenure; Id., ¶ 8; and "that President Shumaker informed the plaintiff that his tenure recommendation was based on the uncertainty of the University's long term needs, but that she met the criteria for promotion." Id., ¶ 9. They deny, however, both that CCSU's criteria for promotion and tenure were identical, Id., ¶ 7, and that neither the plaintiff nor President Shumaker publicly disclosed that the plaintiff had been denied tenure. Id., ¶ 10.
The defendants further admit: that after the plaintiff was denied tenure, she was chosen to serve on the Appointments Committee of her Department; Id., Count III, ¶ 6; that following CT Page 1825 her selection, defendant Arends asked her to resign as Chair of the Appointments Committee; Id., ¶ 7; that shortly thereafter, defendant Arends wrote the subject memorandum and distributed it to members of the plaintiff's department; Id., ¶ 8; that in the memorandum, Arends wrote that the plaintiff had not been renewed and was in the process of leaving the University, recommended that she be removed as Chair of the Appointments Committee, and made reference to "rancor" in her department; Id., ¶¶ 9, 10, 12; that after the Arends memorandum was distributed, defendant Klein read portions of that letter to approximately ten members of the plaintiff's department in a CCSU departmental meeting; Id., Count I, ¶ 13; and that defendant Klein did not inform those who attended the meeting that the denial of tenure to the plaintiff was based only on budgetary concerns. Id., ¶ 14. The defendants deny, however: that the facts stated in Arends' memorandum were private facts concerning the plaintiff's private life; Id., Count I, ¶ 18; that the contents of the Arends memorandum, as written or as read aloud at the departmental meeting by defendant Klein, were false and defamatory; Id., Count II, ¶ 16-18; Count III, ¶¶ 11, § 14; that the distribution or reading of the memorandum to the plaintiff's departmental colleagues constituted a publication of the memorandum to anyone, much less a publication to the public generally; Id., Count II, ¶ 14, Count III, ¶ 8, Count IV, ¶¶ 17, 19, 20, Count V, ¶¶ 17, 18, 20, 21; and that Arends' memorandum, as written, distributed and/or read to the plaintiff's colleagues by defendant Klein, placed the plaintiff in a false light before the public. Id., Count IV, ¶ 18, Count V, ¶¶ 18, 19.
On April 12, 1994, the defendants filed a Motion for Summary Judgment as to all five counts of the Revised Complaint. The Motion was accompanied by a supporting memorandum of law, the affidavit of CCSU President Shumaker, a copy of the CCSU Collective Bargaining Agreement (C.B.A.), several pieces of correspondence regarding promotion and tenure, the affidavit of defendant Arends with an attached copy of the subject memorandum, and the affidavit of defendant Klein. On June 23, 1994, the plaintiff filed a memorandum of law in opposition to the Motion for Summary Judgment along with the affidavit of the plaintiff.
I. Summary Judgment Standards
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 384. CT Page 1826 In ruling on a summary judgment motion, "the trial court must view the evidence in the light most favorable to the nonmoving party."Connecticut Bank Trust Co. v. Carriage Lane Associates,219 Conn. 772, 781, 595 A.2d 334 (1991). "[T]he trial court [is] limited to deciding whether an issue of fact exist[s], [and may] not try that issue if it [does] exist." Batick v. Seymour,186 Conn. 632, 647, 433 A.2d 471 (1988).
The party moving for summary judgment "has the burden of showing the nonexistence of any material fact . . . ."; Strada v.Connecticut Newspapers, Inc., 193 Conn. 313, 317, 477 A.2d 1005
(1984); and "that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Batick v. Seymour, supra, 647. The party resisting summary judgment "must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue."Scinto v. Stamm, 224 Conn. 524, 530, 620 A.2d 109 (1993).
 II. Count One: Invasion of Privacy for Giving Unreasonable Publicity to a Private Fact Concerning the Plaintiff's Life
Connecticut has recognized a tort cause of action for invasion of privacy. Venturi v. Savitt, Inc., 191 Conn. 588,468 A.2d 933 (1983). "[T]he law of privacy developed not as a single tort, but as a complex of `four distinct kinds of invasion of four different interests of the plaintiff, which are tied together by the common name, but otherwise have almost nothing in common except that each represents an interference with the right of the plaintiff `to be let alone.'' [Goodrich v. Waterbury Republican-American,Inc., 188 Conn. 107, 127-28, 448 A.2d 1317 (1982)], citing Prosser, Torts (4th ed. 1971) 117, p. 804. The four categories of invasion of privacy are set forth in the 3 Restatement (Second) of Torts, [Section] 652A as follows: [Section] 652B — unreasonable intrusion upon the seclusion of another; [Section] 652C — appropriation of the other's name or likeness; [Section] 652D — unreasonable publicity given to the other's private life; and [Section] 652E — publicity that unreasonably places the other in a false light before the public."Venturi v. Savitt, Inc., supra, 591.
In Count One of her Revised Complaint, the plaintiff sets forth a cause of action against defendant Klein under Section 652D of the Restatement for giving unreasonable publicity to her CT Page 1827 private life. In Perkins v. Freedom of Information Commission,228 Conn. 158, 635 A.2d 783 (1993), the Connecticut Supreme Court approved the Restatement's definition of the cause of action for giving unreasonable publicity to another's private life. Id.,
170-72. Under Section 652D,[1] in order to successfully litigate a cause of action for giving unreasonable publicity to the plaintiff's private life, the plaintiff must plead and prove: (1) that the defendant gave publicity; (2) to a matter concerning the private life of the plaintiff; and (3) that the matter publicized was of a kind that (a) would be highly offensive to a reasonable person, and (b) would not be of legitimate concern to the public. 3 Restatement (Second), Torts § 652D (1971). See also, Perkins v.Freedom of Information Commission, supra, 172.
In the present case, defendant Klein argues that he is entitled to summary judgment on Count One because there is no genuine issue as to any of the following facts: (A) that CCSU's denial of tenure to the plaintiff was a public, not a private, fact; (B) that even if said denial was a private fact, the defendant did not give publicity to that fact, as required to establish his liability; and (C) that in any event, no factfinder could reasonably find that any fact he publicized concerning the denial of the plaintiff's tenure would have been highly offensive to a reasonable person.
A. Private Fact vs. Public Fact
Liability for giving publicity to the private life of another "applies only to publicity given to matters concerning the private, as distinguished from the public, life of the individual. There is no liability when the defendant merely gives further publicity to information about the plaintiff that is already public." 3 Restatement (Second), Torts § 652D, comment (b) (1971). Thus, there is no liability for giving publicity to facts about the plaintiff that are matters of public record and/or open to inspection by the public. Id.
Defendant Klein first argues that CCSU's denial of the plaintiff's tenure application was not a private fact because it was a matter of public record. In support of this argument, the defendant offers the affidavit of CCSU President Shumaker, who avers that "there is nothing confidential or private about either applications for tenure or the outcome on such applications. The recommendations and actions generated in the tenure review process are deemed by the University to be `public records' with[in] the CT Page 1828 meaning of the Freedom of Information Act." Klein argues that since CCSU deems recommendations and actions generated in the tenure review process public records pursuant to the Freedom of Information Act (FOIA), anyone can request information concerning tenure applications, then compare it to the public list of individuals granted tenure to deduce who was denied tenure.
The plaintiff argues that the fact that she was denied tenure was a private fact. In support of this claim, she avers that before defendant Arends' memorandum was read at the departmental meeting by defendant Klein, she had kept secret the fact that she had been denied tenure. Furthermore, the plaintiff states that the President of CCSU had not disclosed the fact that she had been denied tenure.
Against this background, there is a genuine issue of material fact as to whether the denial of tenure to the plaintiff was a private fact. The defendant's argument that information generated during the tenure review process was a matter of public record is based upon the claim that such information is subject to disclosure under the FOIA. The FOIA requires that "all records maintained or kept on file by any public agency . . . shall be public records and every person shall have the right to inspect such records promptly during regular office or business hours or to receive a copy of such records. . . ." General Statutes §1-19(a). Indeed, there is an "overarching policy underlying the [FOIA] favoring the disclosure of public records." (Internal quotation marks omitted.) Superintendent of Police v. Freedom ofInformation Commission, 222 Conn. 621, 626, 609 A.2d 998 (1992).
General Statutes § 1-19(b)(2), however, exempts from the disclosure requirements of the FOIA "personnel or medical files and similar files the disclosure of which would constitute an invasion of privacy." General Statutes § 1-19(b)(2). The Supreme Court has stated that, "[W]hen the claim for exemption involves1-19(b)(2), [t]he plaintiffs must meet a twofold burden of proof. . . . First, they must establish that the files in question are within the categories of files protected by the exemption, that is, personnel, medical or `similar' files. Second, they must show that disclosure of the records would constitute an invasion of personal privacy." Perkins v. Freedom of Information Commission,supra, 168.
Pursuant to the Collective Bargaining Agreement, attached as an exhibit to the affidavit of President Shumaker, and in force at CT Page 1829 all times relevant to this lawsuit, the recommendations and evaluations generated during the tenure review process are matters which belong in the tenure applicant's personnel file. C. B. A. § 4.14.1. Therefore, the defendant's argument that anyone could obtain the recommendations and evaluations generated during the tenure review process is only viable if such information would not constitute an invasion of privacy, because it is clear that such information is a part of the plaintiff's personnel file. SeePerkins v. Freedom of Information Commission, supra, 167-68; CBA § 4.14.1.
The Perkins Court, while deciding what constitutes an invasion of privacy pursuant to section 1-19(b)(2), stated that, "[a]s a common-law matter, the privacy concerns embedded in the `invasion of personal privacy' exemption from the FOIA mirror developing notions of protection for personal privacy that have emerged in a variety of legal contexts since the latter part of the nineteenth century. Although the precise definition of a right to privacy varies with the particular context in which the right has been recognized, the statutory exemption finds its most persuasive common-law counterpart in the tort of invasion of privacy, particularly in that aspect of the tort of invasion of privacy that provides a remedy for unreasonable publicity given to the person's private life." (Footnotes omitted) Id., 170-171, citing 3 Restatement (Second), Torts § 652D (1977). "The commentary accompanying § 652D underscores the close relationship between the tort action and the statutory exemption. Comment (b) of § 652D describes the types of personal and private information that are given protection under the law of torts: `Every individual has some phases of his life and his activities and some facts about himself that he does not expose to the public eye, but keeps entirely to himself or at most reveals only to his family or to close personal friends. Sexual relations, for example, are normally entirely private matters, as are family quarrels, many unpleasant or disgraceful or humiliating illnesses, most intimate personal letters, most details of a man's life in his home, and some of his past history that he would rather forget. When these intimate details of his life are spread before the public gaze in a manner highly offensive to the ordinary reasonable man, there is an actionable invasion of his privacy, unless the matter is one of legitimate public interest.'" Id., 172-73, quoting 3 Restatement (Second), Torts § 652D, comment (b) (1977). Thus, the Court held that section "1-19(b)(2) of the FOIA would only bar disclosure of, information that is highly offensive to the ordinary reasonable person." Perkins v. Freedom of Information Commission, supra,
CT Page 1830 174.
Therefore, to determine if the defendant's disclosure of the fact that the plaintiff was denied tenure was the disclosure of a private fact, the following question must be answered: Is the fact that the plaintiff was denied tenure the type of fact that the ordinary individual would find highly offensive?
In her affidavit, the plaintiff avers that she considered the denial of her application for tenure a private aspect of her life that she intended to keep secret. Plf's Affidavit ¶¶ 8, 22. Moreover, the Collective Bargaining Agreement states that records within a CCSU employee's personnel file are to be kept confidential; CBA § 4.14.1; and, that "[t]he entire contents of personnel files shall be considered private and may not be opened to any outside scrutiny except when ordered by a court of law."Id., § 4.14.2.10. It appears that the Collective Bargaining Agreement establishes a presumption that the contents of a personnel file are exempt from the disclosure requirements of the FOIA unless a court orders otherwise because they are private facts. Moreover, "[I]n Chairman v. Freedom of InformationCommission, [217 Conn. 193, 196, 585 A.2d 96 (1991)], [the Supreme Court] held that the disclosure of internal, departmental, personnel evaluations would constitute an invasion of privacy in part because the evaluations were conducted under appropriate confidential circumstances with the employees, thereby making such reports matters that do not legitimately concern the public."Perkins v. Freedom of Information Commission, supra, 174. Similarly, the disclosure of internal, personnel evaluations for tenure would constitute an invasion of privacy pursuant to section1-19(b)(2). Therefore, there remains a genuine issue of material fact as to whether the plaintiff's tenure denial is the type of fact which a reasonable person would want to keep private. The defendant has failed to carry his burden of establishing that there is no genuine issue of material fact as to the first element of the cause of action for giving unreasonable publicity to a private fact concerning the plaintiff's life.
B. Giving Publicity To Private Facts
A defendant will only be held liable for invasion of privacy if he "gives publicity" to facts concerning the private life of the plaintiff. 3 Restatement (Second), Torts § 652D, comment (a) (1971). Under the Restatement, CT Page 1831
 Publicity . . . differs from "publication," as that term is used in § 577 in connection with liability for defamation. "Publication," in that sense, is a word of art, which includes any communication by the defendant to a third person. "Publicity," on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches, or is sure to reach, the public.
 Thus it is not an invasion of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons. On the other hand, any publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity within the meaning of the term as it is used in [this cause of action]. The distinction, in other words, is one between private and public communication.
Id. (Emphasis added.)
Defendant Klein argues that even if this Court should determine that the denial of plaintiff's tenure was a private fact, he is entitled to summary judgment because he did not "give publicity" to that fact, as that term is used in the Restatement. On this score, defendant Klein offers his own affidavit, wherein he attests that, "[I]n a departmental meeting on February 21, 1992 I read aloud to the ten (10) people present, all of whom [were] department members, the second and possibly third paragraph" of defendant Arends' memorandum. Klein argues that while Connecticut courts have not ruled on the precise question of what constitutes "giving publicity" in the context of invasion of privacy, several Connecticut courts have held that even a "publication" does not CT Page 1832 occur, for the purpose of a common-law action for defamation, when the communication is to co-workers or employees, and not to the public generally. Def's Memorandum of Law, p. 8-9, citing Ziombrov. Connecticut Institute for the Blind, 818 F. Sup. 497, 503 (D. Conn. 1993), and Abrahams v. Young Rubican, Inc.,793 F. Sup. 404, 407 (D. Conn. 1992). Thus, the defendant argues that since he read the memorandum to only ten of the plaintiff's co-workers, all members of her department, he cannot be held to have given publicity to the facts set forth therein.
In response, the plaintiff argues that there is publicity if the fact is disclosed to a segment of the public whose knowledge of the fact would cause embarrassment to her. Arguing that the individuals who attended the departmental meeting were such a segment of the public, the plaintiff claims that there is indeed a genuine issue of material fact as to whether the defendant "gave publicity" to a private fact concerning her life.
Though Connecticut courts have not in fact decided what constitutes "publicity" as that term is used in the context of an action for invasion of privacy, the Restatement gives several useful illustrations to help explain what constitutes "publicity" for the purpose of this cause of action. The Restatement provides:
 1. A, a creditor, writes a letter to the employer of B, his debtor, informing [the employer] that B owes the debt and will not pay it. This is not an invasion of B's privacy under this Section.
 2. A, a creditor, posts in the window of his shop, where it is read by those passing by on the street, a statement that B owes a debt to him and has not paid. This is an invasion of B's privacy.
 3. A, a motion picture exhibitor, wishing to advertise a picture to be exhibited, writes letters to a thousand men in which he makes unprivileged and objectionable statements concerning the private life of B, an actress. This is CT Page 1833 an invasion of B's privacy.
Restatement (Second), Torts § 652D, illus. 1-3 (1971).
In light of these illustrations, the Court can only conclude that publicity is a communication that reaches, or is sure to reach, the public at large. Whether the plaintiff would be embarrassed by the communication is not the issue, for certainly the employee in the first illustration above would be embarrassed if his employer learned of his failure to pay his debts. Id.
Liability, therefore, hinges upon proof that there was a communication of a private fact to the public at large. Id.
In this case, the undisputed facts of record show that the only communication of the plaintiff's tenure status was to the ten members of her department who attended the February 12, 1992 meeting. Because the reading of defendant Arends' letter at that time constituted only a private, business-related communication to a small group of persons, it does not constitute the "giving of publicity" within the meaning of the Restatement. There is therefore no genuine issue of material fact that the defendant failed to "give publicity" to a private fact. For that reason, defendant Klein is entitled to summary judgment on Count One of the Revised Complaint.
 C. Publicity That is Highly Unreasonable To The Ordinary Person
Whether a matter is highly offensive and objectionable is a function of whether the disclosure concerned a private fact. See
Restatement (Second), Torts § 652D, comment (c) (1971). The Restatement recognizes that complete privacy does not exist in this world, and thus, that the ordinary and reasonable man must "expect the more or less casual observations of his neighbors as to what he does . . . ." Id. Therefore, it notes that the "ordinary and reasonable man does not take offense at a report in a newspaper that he has returned from a visit, gone camping in the woods or given a party at his house for his friends." Id.
In the present case, the defendant argues he is entitled to summary judgment because no reasonable factfinder could conclude that his memorandum was a communication that was highly offensive and objectionable to a reasonable person of ordinary sensibilities. CT Page 1834
The fact that the plaintiff was denied tenure is not the type of fact that is discernible from the "more or less casual observations of [her] neighbors." Restatement (Second), Torts § 652D, comment (c) (1971). Therefore, there remains an issue of fact as to whether the ordinary and reasonable person would be highly offended by the disclosure of that fact.
 III. Counts Four and Five: Publicity Placing Person In False Light Before the Public
In Counts Four and Five, the plaintiff alleges a cause of action against Arends and Klein, respectively, for invasion of privacy for publicity placing the plaintiff in a false light before the public. The plaintiff alleges that the defendants' statement that the plaintiff was denied tenure "publicized the private fact that Dr. Handler was denied tenure, and placed the plaintiff in a false light as said memorandum was extremely misleading and false because it could reasonably be understood that Dr. Handler was denied tenure for other than budgetary reasons." R.C., Count IV, ¶ 17, Count V, ¶ 18. Moreover, the plaintiff alleges that defendants' statement that her actions had caused rancor in her department "cast Dr. Handler in the false light that she was a troublesome person who was unable to maintain relations with or otherwise work with her colleagues." Id.,
Count IV, ¶ 19, Count V, ¶ 20.
"In order to establish invasion of privacy by false light, the plaintiff must show `(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.' 3 Restatement (Second), Torts [§] 652E . . . `This form of invasion of privacy protects one's interest in not being placed before the public in an objectionable false light or false position, `or in other words, otherwise than as he is.' 3 Restatement (Second), Torts [§] 652E, comment b. The essence of a false light privacy claim is that the matter published concerning the plaintiff (1) is not true . . .; and (2) is such a `major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position.' Id., comment c." (Citations omitted.) Jonap v. Silver,1 Conn. App. 550, 557-58, 474 A.2d 800 (1984), citing Goodrichv. Waterbury Republican-American, Inc., supra, 132-33. CT Page 1835
The defendants move for summary judgment as to Counts Four and Five, arguing that there is no genuine issue of material fact: (A) that the fact that the plaintiff was denied tenure was not a private fact, and thus, no invasion of privacy occurred; (B) that there was no falsehood contained in the memorandum; and (C) that the statements were not publicized.
A. Denial of Tenure As A Private Fact
The form of invasion of privacy covered by the cause of action for publicity placing a person in a false light before the public "does not depend upon making public any facts concerning the private life of the individual. On the contrary, it is essential to [that cause of action] that the matter published concerning the plaintiff is not true." 3 Restatement (Second), Torts § 652E, comment (a) (1971). Therefore, the defendant's argument that the statements complained of by the plaintiff did not involve a private fact concerning the plaintiff's life is misplaced.
B. Whether the Matter Allegedly Publicized Was False
"[I]t is essential to [the cause of action for publicity placing a person in a false light before the public] that the matter published concerning the plaintiff is not true." 3 Restatement (Second), Torts § 652E, comment (a) (1971). To sustain the burden of establishing that the statement is not true, "[i]t is enough that [the plaintiff] is given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false." Id.,
comment (b) (1971).
The defendants argue that the plaintiff cannot set forth a claim for false light/invasion of privacy because the fact that the plaintiff was denied tenure was, and is, true. The plaintiff responds that the defendants publicly stated both that she was denied tenure and that she caused "rancor" in her department. The plaintiff claims that the statement that she caused "rancor" in her department placed her in a false light by portraying her as someone who was troublesome, and unable to work with her colleagues. The defendants argue that the memorandum states that the "current situation," not the plaintiff, caused "rancor" in the department. CT Page 1836
In deciding a motion for summary judgment "the trial court must view the evidence in the light most favorable to the nonmoving party"; Connecticut Bank Trust Co. v. Carriage LaneAssociates, supra, 781 "[T]he trial court [is] limited to deciding whether an issue of fact exist[s], [and may] not try that issue if it [does] exist." Batick v. Seymour, supra, 647.
The plaintiff attests in her affidavit that the statement that she caused "rancor" in the department was false. A fair reading of the memorandum could lead a reasonable factfinder to infer that the plaintiff was the cause of the "current situation," and therefore was the cause of the "rancor." Preceding the statement in the memorandum that the "current situation" caused "rancor" is a statement that the plaintiff refused to resign, upon defendant Arends' request, as Chair of the Appointments Committee. Indeed, the "current situation" refers to the plaintiff's continued occupation of the title of Chair of the Appointments Committee. Thus, a reasonable factfinder could conclude from the memorandum that the plaintiff had caused "rancor" in the department. Therefore, there remains a genuine issue of material fact as to whether the defendants attributed to the plaintiff "characteristics, conduct or beliefs that are false." See 3 Restatement (Second), Torts § 652E, comment (b) (1971).
C. Whether the Matter In Question Was Publicized
The second ground upon which the defendants claim that they are entitled to summary judgment on the fourth and fifth counts of the Revised Complaint is that their challenged conduct did not "give publicity" to matters concerning the plaintiff which placed her in a false light "before the public." Here, as in their challenge to the "publicity" element of the plaintiff's unreasonable-publicity-to-private-life/invasion of privacy claim in Count One of her Revised Complaint, the defendants argue that their respective communications concerning the plaintiff are not actionable as invasions of her privacy because at most, they were non-public disclosures, made in the course of and for the purpose of conducting internal University business, to a small and discrete group of the plaintiff's departmental colleagues rather than to the general public or to a significant portion thereof.
This argument is obviously based on two suppositions. The first is that "publicity" is indeed an essential element of a false light/invasion of privacy action in Connecticut. The second is that such publicity, if indeed it is required, must be the same CT Page 1837 sort of publicity which is required to prove an unreasonable-publicity-to-private-life/invasion of privacy claim under Restatement (Second) of Torts § 652D. If both suppositions are correct, then the defendants are entitled to summary judgment on Counts Four and Five of the Revised Complaint for the same reasons that defendant Klein is so entitled on Count One.
It is well settled that "publicity" is a required element of the false light/invasion of privacy cause of action, as it is described in Section 652E of the Restatement (Second) of Torts.Id., comment (a) ("The rule stated here is . . . limited to the situation in which the plaintiff is given publicity.") Therefore, because Connecticut has expressly adopted the Restatement definition of that cause of action, Goodrich v. WaterburyRepublican-American, Inc., 188 Conn. 107 (1982), publicity is an essential element of that cause of action in this State.
To date, our Supreme and Appellate Courts have not been called upon to define the term "publicity" in and for the purpose of a Connecticut false light/invasion of privacy action. Therefore, in the absence of controlling authority to the contrary, this Court must glean the essential meaning of that term from the provision of the Restatement on which it is based.
Section 652E of the Restatement does not expressly define the term "publicity". However, it unambiguously states that the only form of publicity which is actionable thereunder is that which places another person in a false light "before the public." So defined, the tort of false light/invasion of privacy logically requires proof not merely of limited, private communication to one or more other persons, but of widespread communication to the general public or a significant segment thereof.
By implication, the term "publicity", as used in and for the purpose of an action under Section 652E, is therefore to be given the same meaning as that term is expressly given in an action under Restatement § 652D, as discussed in Part II.B of this Memorandum of Decision, above. That definition, to reiterate, is as follows:
 Publicity . . . differs from "publication," as that term is used in § 577 in connection with liability for defamation. "Publication," in that sense, is a word of art, which includes any communication by the defendant to a third CT Page 1838 person. "Publicity," on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches, or is sure to reach, the public.
 Thus it is not an invasion of privacy to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons. On the other hand, any publication in a newspaper or a magazine, even a small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity within the meaning of the term as it is used in [this cause of action]. The distinction, in other words, is one between private and public communication.
Curiously, however, comment (a) to Section 652E explicitly states that the definition of "publicity" for the purpose of that Section is to be taken from comment (a) to Restatement § 652C,
wherein the authors describe the separate form of privacy invasion known as appropriating another's likeness to oneself. This reference is most unusual, for the tort of invasion of privacy by appropriating another's likeness does not require proof of publicity, and comment (a) thereto discusses the wholly unrelated topic of the purpose of Section 652C.
Other courts confronting this interpretive dilemma have reached the simple but obvious conclusion that the internal reference in the commentary to Section 652E to the nonexistent definition of publicity in comment (a) to Section 652C is merely a misprint, and that the true intent of the drafters was to apply the definition of publicity in comment (a) to Section 652D to false light invasion of privacy claims. See,e.g., Moore v. Big Picture Co., 828 F.2d 270, 273 (5th Cir. 1987). As explained by the Court in Moore,
CT Page 1839
 The courts which have addressed this issue have almost universally adopted the definition of "publicity" contained in § 652D, Comment a of the Restatement. See Krochalis v. Insurance Company of North America, 629 F. Sup. 1360, 1371 (E.D. Pa. 1985) ("[p]ublicity sufficient to support a cause of action for publicity given to private life or publicity placing a person in a false light is defined in the comments to [§ 652D of] the Restatement.)"; Bromhall v. Rorvik, 478 F. Sup. 361, 367 (E.D. Pa. 1979) ("publicity (i.e., widespread dissemination), rather than mere publication, is required" for a false light cause of action); Brauer v. Globe Newspaper Co., 351 Mass. 53, 58, 217 N.E.2d 736, 740 (1966) ("an invasion of privacy based on `publicity which casts the plaintiff `in a false light in the public eye' requires acts which are sufficient in themselves to familiarize the public with either the name, likeness, or other means of identifying the plaintiff."); La Mon v. Westport, 44 Wash. App. 664, 669, 723 P.2d 470, 474 (1986) ("[b]y definition, false light publicity requires publicity of the falsehood, that is, to a substantial number of people."); Crump v. Beckley Newspapers, Inc., 320 S.E.2d 70, 87
(W.Va. 1983) ("although widespread publicity is not necessarily required for recovery under a defamation cause of action, it is an essential ingredient to any false light invasion of privacy claim"). Since there is no reason to believe that Texas would adopt a different definition from the one favored by these courts, we determine that widespread publicity of the highly offensive matter is required before a successful false light cause of action may be established.
 Id. (footnote omitted).
In light of the foregoing observations, the Court is persuaded that the reference to comment (a) to Restatement § 652C in the commentary to Section 652E is indeed a misprint, and that CT Page 1840 the framers of Section 652G meant to incorporate therein the definition of publicity set forth in comment (a) to Section 652 D. Therefore, in the absence of any indication in the controlling case law of this State that a more limited form of publication will be adequate to establish a claim of false light/invasion of privacy, the Court must agree with the defendants that there can be no such liability unless the matters claimed to place the plaintiff in a false light are publicized to the general public or to a significant portion thereof.
Here, then, as on Count One, the uncontested evidence simply fails to establish that either defendant "gave publicity" to matters which placed the plaintiff in a false light "before the public." Arends' memorandum was not published in the media, broadcast over the public airwaves, posted in a public place or distributed to the public generally. Instead, it was sent to certain members of her department by means which are not claimed or shown to have exposed its contents to anyone other than its addresses. In substance, moreover, it is not claimed to have invited or engendered widespread communication of its contents by those who received it. To the contrary, it was sent out as an internal, departmental memorandum for the limited, obvious purpose of addressing a matter of departmental policy, to wit: determining who should appropriately serve as the Department's Appointments Committee. There is nothing inherent in the memorandum to suggest that its contents would probably become known to the public at large. This, then, was but private communication to a small, discrete group of people. It did not "give publicity" to matters portraying the plaintiff in a false light "before the public."
Similarly, Professor Klein's reading of all or selected portions of the Arends memorandum at the departmental meeting was but a non-public communication to a small, discrete group of her colleagues which was not calculated, in form or in substance, to reach the general public, and is not in fact claimed to have done so. The contents of Klein's communications to the plaintiff's colleagues were identical to those of Arends, for all Klein is claimed to have done is to read the Arends memorandum. The method of communicating such information, moreover, was at least as limited as that chosen by Arends, for it was done in the special forum of a departmental meeting, wherein the matters communicated were germane to departmental business, not in a broader public forum to persons who had no professional reason for being exposed to it. This was not, then, a communication to the general public or a significant portion thereof, and it was not the sort of CT Page 1841 communication which invited or engendered the broader dissemination of the matters so communicated to anyone outside the plaintiff's department, much less to the public at large. In short, it cannot be found to have "given publicity" to matters concerning the plaintiff which placed her in a false light "before the public."
For the foregoing reasons, the defendants' Motion for Summary Judgment must be granted as to Counts Four and Five of the Revised Complaint.
IV. Counts Two and Three: Defamation
"`Broadly speaking, "defamation" is an attack on the reputation of another, that is to say, the unprivileged publication of false statements which naturally and proximately result in injury to another. The term is used to connote fault in the context of broadcasting an alleged insult.'" Ford v. B. D.Trustees, Conn. State University, Superior Court, Judicial District of Hartford/New Britain at Hartford, Docket No. 51 15 57 (August 12, 1993, Koletsky, J.); quoting 53 C.J.S. Libel and Slander, Sec. 2 (1987, Sup. 1992). Thus, defamation is "that which tends to injure `reputation' in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him." Prosser and Keeton, The Law of Torts sec. 111, p. 773 (5th ed. 1984 Supp. 1988).
"Before a party will be held liable for [defamation], there must be an unprivileged publication of a false and defamatory statement." Strada v. Connecticut Newspapers, Inc., supra, 316. "A prima facie case of defamation is made when the plaintiff demonstrates that: (1) [an unprivileged] defamatory statement was made by the defendant; (2) [t]he defamatory statement identifies the plaintiff to a reasonable [receiver]; (3) [t]he defamatory statement is published to a third person; and (4) [t]he plaintiff's reputation suffers injury." (Citation omitted.) Slezv. Komarow, 2 CSCR 176, 177 (December 29, 1986, Harrigan, J.).
In the second and third counts, the plaintiff alleges that defendant Arends wrote, and on two separate occasions published, a defamatory memorandum. The plaintiff alleges that the memorandum was defamatory because it stated that the plaintiff was denied tenure but failed to disclose the additional fact that the tenure denial was based solely upon budgetary concerns and not CT Page 1842 upon the plaintiff's job performance or academic qualifications. Moreover, the third count further alleges that the defendant Arends defamed the plaintiff when he published that the plaintiff's actions had caused "rancor" in the department, thereby depicting the plaintiff as a person who could not work with her
The defendant first argues that summary judgment should be granted as to Counts Two and Three because there is no genuine issue of material fact that the memorandum was not libelous. In support of this argument, the defendant first asserts that the fact the plaintiff was denied tenure was a true statement. Furthermore, the defendant argues that the use of the term "rancor" in the memorandum was not referring to the plaintiff, but referred to the "rancor" caused by the "current situation". The defendant further argues that even if the statements were false, the defendant did not publish the statements and the reading and writing of the memorandum was protected by a qualified privilege which extended to the defendant.
The plaintiff asserts that summary judgment should be denied as to Counts Two and Three because there exists a factual dispute as to whether the content of the letter was defamatory and as to whether a "publication" occurred. The plaintiff further argues that the existence of factual issues as to whether the communications are protected by a qualified privilege bar the granting of summary judgment on these counts.
In Woodcock v. Journal Publishing Co., 6 CSCR 667 (June 18, 1991, Dunn, J.), the Court, drawing upon a holding of the Supreme Court in Strada v. Connecticut Newspapers, Inc., supra, 323, recognized a cause of action for libel by omission or innuendo. The essence of a cause of action for libel by omission or innuendo is an allegation by the plaintiff that, although the statement by the defendant is true, the defendant knew of the "existence of additional material facts which, if reported, would have changed the tone of the article." (Footnote omitted.) Id., "Innuendo or inference may result merely from the tone or "slant" of an article, or innuendo or inference may also result from the failure to present the whole picture. [For example], [i]n MemphisPublishing Co. v. Nichols, 569 S.W.2d 412 (Tenn. 1978), a newspaper article correctly stated that the plaintiff had been shot when she had been found with another woman's husband. The article neglected to report, however, the additional fact that the plaintiff and the other woman's husband were at a social gathering, the several members of which included the plaintiff's CT Page 1843 husband. The clear inference from the article was an adulterous affair; the additional fact clarified the plaintiff's position as an innocent bystander." Id., 322-323.
Defendant Arends argues that he is entitled to summary judgment because the statement that the plaintiff was denied tenure was true. However, the plaintiff has set forth a cause of action for libel by omission because the plaintiff alleged that the defendant failed to report the additional fact that the denial of tenure was based upon budgetary concerns and not upon the plaintiff's job performance or academic qualifications. The plaintiff has stated in her affidavit that this omission would cause the reasonable listener to conclude that she was not qualified for tenure, when in fact she was. Therefore, to prevail on this aspect of his Motion, defendant Arends must establish that the persons to whom the allegedly defamatory remark was made would not have inferred or concluded by false implication that the plaintiff was not academically qualified to meet the standards for tenure.
The defendant has failed to prove that there is no genuine issue of material fact concerning what the persons who received the defamatory remark would have inferred or concluded when they heard his challenged statement. In his affidavit, defendant Arends states that, "I believe all who received the memorandum were already aware or could have easily determined that [the plaintiff] had been denied tenure . . . ." Likewise, in defendant Klein's affidavit, he attests, "I believe [the ten members] present [at the departmental meeting] were aware, or could have easily determined prior to my reading portions of the memorandum, that [the plaintiff] had been denied tenure . . . ." The party moving for summary judgment "has the burden of showing the nonexistence of any material fact . . . ."; Strada v. ConnecticutNewspapers, Inc., supra, 317; and "that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Batick v. Seymour, supra,
647. The Court concludes that the defendants' beliefs concerning what the persons who heard their defamatory remarks thought when they heard them, does not make it "clear what the truth is," or "exclude any real doubt" concerning what these person actually heard and understood.
The defendant further argues that he is entitled to summary judgment because there was no publication of the alleged defamatory statement. The defendant argues that several CT Page 1844 Connecticut courts in the context of defamation cases have held, as a matter of law, that no publication has occurred under circumstances where the alleged defamatory material was disseminated to co-employees. In support, the defendant cites the court to Ziombro v. Connecticut Institute for the Blind,818 F. Sup. 497, 503 (D. Conn. 1993), and Abrahams v. Young Rubican,Inc., 793 F. Sup. 404, 407 (D. Conn. 1992).
The conclusions reached by the Ziombro and Abrahams Courts rely upon the holding in L. Cohen Co. v. Dunn Bradstreet,Inc., 629 F. Sup. 1423 (D. Conn. 1986). In L. Cohen Co., the Court was faced with the question whether, under Connecticut law, the dissemination of an allegedly defamatory credit report, from a corporate defendant to its employee who was responsible for verifying the contents of a corporate report, constituted a "publication", as that term is used in the context of an action for defamation. Id., 1427. The Court first noted that the exact issue had not been addressed either by a Connecticut court or by a federal court applying Connecticut law. Id. Then relying upon a decision from the U.S. Court of Appeals for the 8th Circuit, the Court held that "the dissemination of allegedly defamatory material among employees of a corporate defendant does not constitute a separate `publication' of that material under Connecticut law. Id. The rationale for the decision was that two members of the same corporation discussing a matter amounted to nothing more than the corporation speaking to itself. Id. Since Ziombro and Abrahams, three Connecticut courts have addressed the same issue. See Hansen v. Berger, LehmanAssociates, Superior Court, Judicial District of Hartford/New Britain at Hartford, Docket No. 395163 (October 14, 1994, Freed, J.); MacCall v. United Foam Plastics, 6 Conn. L. Rptr. No. 11, 318 (May 18, 1992, Mihalakos, J.); McGrath v. The Yale Corporation,
Superior Court, Judicial District of New Haven at New Haven, Docket No. 326144 (May 17, 1993, Thompson, J.). In McGrath v. TheYale Corporation, the Court noted that the holding in L. Cohen Co., supra, appeared broader than its facts warranted. The Court stated, "[t]he Cohen case involved the dissemination of allegedly defamatory material only to those corporate employees whose job functions included the need to be aware of that information . . . . However, this court can find no valid reason to justify a holding that dissemination of defamatory material to one who has no business reason to receive it cannot be publication merely because the recipient is an employee of the same corporation as the defendant." Id.
CT Page 1845
Without deciding whether the holdings in Ziombro and Abrahams
should be extended to cover the facts of this case, the Court concludes that this defendant has failed to prove that each recipient of the defamatory material had a valid business reason to receive it. Therefore, it finds there is a genuine issue of material fact whether the defendant published the allegedly defamatory remarks.
The defendant further claims that even if this Court determines that he published defamatory material concerning the plaintiff, he is entitled to summary judgment because the defamatory communications were protected by a qualified privilege.
To establish the defense of a conditional or qualified privilege, a defendant must prove five essential elements, including: "(1) an interest to be upheld, (2) a statement limited in scope to this purpose, (3) good faith, (4) a proper occasion, and (5) a publication in a proper manner to proper parties only."Miles v. Perry, 11 Conn. App. 584, 595, 529 A.2d 199 (1987). "A conditional or qualified privilege may be abused or lost if the defendant published or broadcast the defamatory remarks with malice, improper motive, or bad faith." Id., 594 n. 8. "It is for the court to determine, as a matter of law, whether the defendant made the defamatory statements while acting on an occasion of privilege, as in the bona fide discharge of a public or private duty . . . . It is a question of fact for a court or a jury, however, to determine whether the defendant has abused a conditional privilege." (Citation omitted.) Id.
Thus, "[e]ven when a legitimate interest is at stake, a claim of conditional privilege is defeated if the defendant acts with malice in making the defamatory communication at issue. For purposes of our law of defamation, malice is not restricted to hatred, spite or ill will against a plaintiff, but includes any improper or unjustifiable motive. [Citations omitted.] . . . . An assertion of conditional privilege also fails if the defamatory communication is addressed to a party whose knowledge of the matter is not reasonably believed to be necessary to protect the defendant's interest or if the content of the publication is excessive." Bleich v. Ortiz, 196 Conn. 498, 504 (1985).
In her affidavit, the plaintiff attests that it is her belief that the defendant communicated the defamatory remarks in bad faith. Viewing "the evidence in the light most favorable to the nonmoving party"; Connecticut Bank Trust Co. v. Carriage LaneCT Page 1846Associates, supra, 781; the plaintiff's assertion that the defendant acted in bad faith is not inconceivable. It is possible that defendant Arends was angry with the plaintiff because she refused to resign as Chair of the Appointments Committee when he requested her to do so. It is, therefore, possible that the defendant published the memorandum to discredit her reputation in an attempt to have her removed as Chair of the Committee. A conditional privilege may be lost if the defendant published the defamatory remarks in bad faith. Miles v. Perry, supra, 594 n. 8. The determination of bad faith is a question of fact for the jury.Id. There is a genuine issue of material fact as to whether the defendant acted in bad faith. Therefore, there is a genuine issue of material fact as to whether the defendant's remarks were privileged. Accordingly, the defendants' Motion for Summary Judgment as to Counts Two and Three of the plaintiff's Revised Complaint must be denied.
CONCLUSION
Summary judgment is hereby granted as to Counts One, Four and Five of the Revised Complaint because the defendants did not give publicity to their alleged statements concerning the plaintiff. As to Counts Two and Three, however, the defendants' Motion for Summary Judgment must be denied, because on these counts, there remain genuine issues of material fact for the finder of fact to decide.
Michael R. Sheldon Judge