KENNETH VENTURI *v.* SAVITT, INC.
(11010)

SPEZIALE, C. J., PETERS, HEALEY, SHEA and GRILLO, Js.

Argued October 6—decision released December 20, 1983

*Edward J. Daly, Jr.,* for the appellant (plaintiff).
*Robert C. Danaher,* for the appellee (defendant).

GRILLO, J. This is an appeal from an adverse determination in the plaintiff's action for invasion of privacy against Savitt, Inc., a Hartford retail jewelry store. The plaintiff, Kenneth Venturi, was a professional golfer who competed in the Greater Hartford Open Golf Tournament (hereinafter GHO) in both 1963 and 1964. The GHO was a fundraising event for charitable purposes promoted by the Greater Hartford Jaycees, Inc. In 1964, the plaintiff won both the GHO and the U.S. Open; the latter tournament is considered one of the most prestigious in the world.

During the 1963 GHO in Hartford, the plaintiff posed for a photograph with William Savitt, the president and founder of Savitt, Inc. Savitt was a well-known, community-minded promoter of various civic projects. At some undetermined time after this picture was taken, the plaintiff terminated his participation in golf tournaments and began a career as a sports commentator. By 1977, he was employed by Columbia Broadcasting System (hereinafter CBS) to narrate nationally televised golf events. He was also in the business of sponsoring products sold by others.

In 1977, the plaintiff came to Hartford for CBS to telecast the GHO from the Wethersfield Country Club. On Friday, August 5, 1977, the day before his appearance on CBS, an advertisement appeared in the Hartford Courant and the Scoreboard, the latter publication being distributed without cost to those attending the GHO. The advertisement depicted both Savitt and Ven-

turi, the latter holding a diamond putter made by Savitt. The title of the advertisement read: "Bill Savitt says: Go, Go, Go—Sammy Davis, Jr. GHO $210,000 Golf Tournament." The caption below the picture stated: "Pro Ken Venturi with Bill Savitt's Fund Raising $60,000 Diamond Putter." The bottom third of the advertisement contained a rather clever and humorous description of the defendant corporation's business titled "Savitt Invites You To Play at his P.O.M.G. Country Club—Only in Downtown Hartford."

This case presents a somewhat unorthodox pleading sequence. In March of 1979, the plaintiff filed his complaint against Savitt, Inc. This original complaint alleged that as a result of the defendant's unauthorized publication of his picture, the plaintiff suffered humiliation, embarassment, public ridicule, loss of sleep and mental anguish, all to the plaintiff's financial damage. The plaintiff claimed that the acts of the defendant evidenced a wanton disregard for the plaintiff's reputation, character and feelings; therefore, he sought general, special, and punitive damages. However, upon reconsideration and after the filing of a motion for disclosure by the defendant, the plaintiff filed an amended complaint for invasion of privacy containing the *sole claim* that "[t]he acts of the defendant by its duly authorized agents and representatives were malicious, and the plaintiff seeks punitive damages."

The trial court found that the plaintiff failed to establish that Savitt, Inc. exhibited either malice or reckless indifference in its treatment of Venturi. The court characterized the newspaper article as a "promotion for the GHO" and not an "endorsement by Venturi of Savitt, Inc." Since Venturi had "not sustained his burden of proof of showing any damages at all," the court entered judgment for the defendant plus costs. It is from this judgment dated July 24, 1981, that the plaintiff appeals.

The plaintiff presents the following issues on appeal: (1) whether the court erred in failing to find that the use of the plaintiff's picture invaded his privacy and entitled him to an award of damages; (2) whether the court erred in failing to award damages to the plaintiff; (3) whether the court erred in failing to award punitive damages; (4) whether the court erred in prohibiting the expert evidence of Peter Fox on the characterization of the advertisement; (5) whether the court erred in admitting exhibits concerning Savitt's dealings with others; and (6) whether the court erred in making certain comments to the plaintiff's counsel.

We have only recently recognized the existence of an invasion of privacy action in Connecticut in *Goodrich* v. *Waterbury Republican-American, Inc.,* 188 Conn. 107, 448 A.2d 1317 (1982). In *Goodrich,* we noted that the law of privacy developed not as a single tort, but as a complex of "four distinct kinds of invasion of four different interests of the plaintiff, which are tied together by the common name, but otherwise have almost nothing in common except that each represents an interference with the right of the plaintiff 'to be let alone.' " Id., 127–28, citing Prosser, Torts (4th Ed. 1971) § 117, p. 804. The four categories of invasion of privacy are set forth in the 3 Restatement (Second) of Torts, § 652A as follows: § 652B—unreasonable intrusion upon the seclusion of another; § 652C—appropriation of the other's name or likeness; § 652D—unreasonable publicity given to the other's private life; and § 652E—publicity that unreasonably places the other in a false light before the public.[1]

---

[1] Similarly, Prosser lists the four rights of privacy as (1) appropriation, for the defendant's benefit or advantage, of the plaintiff's name or likeness; (2) intrusion upon the plaintiff's physical solitude or seclusion; (3) publicity, of a highly objectionable kind, given to private information about the plaintiff even though it is true and no action would lie for defamation; and (4) publicity which places the plaintiff in a false light in the public eye. Prosser, Torts (4th Ed. 1971) § 117, pp. 804–15.

The plaintiff claims that Savitt's use of his likeness without permission was designed to work to the defendant's commercial advantage. Succinctly stated, the plaintiff argues that his claim falls squarely within the ambit of 3 Restatement (Second), Torts § 652C. "Appropriation of Name or Likeness: One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." The plaintiff cites as error the trial court's denial of his claim since the court focused on the "inoffensive" nature of the advertisement. The plaintiff maintains that whether the contents of the advertisement were offensive or inoffensive is not pertinent to his claim for invasion of privacy under § 652C. However, even if we were to assume that the uncontroverted evidence presented at trial established that the plaintiff's privacy was invaded for the defendant's commercial advantage, the plaintiff's claim must fail. The failure of this claim must be attributed to the plaintiff's failure either (1) to seek compensatory or general damages or (2) to present evidence justifying an award of punitive damages. Since the plaintiff sought only punitive damages, it is necessary for us to examine only the latter issue.

In order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights. *Collens* v. *New Canaan Water Co.*, 155 Conn. 477, 489, 234 A.2d 825 (1967). In fact, the flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence. *Triangle Sheet Metal Works, Inc.* v. *Silver*, 154 Conn. 116, 128, 222 A.2d 220 (1966). Furthermore, damages may not exceed the amount of the expenses of litigation in the suit, less taxable costs; it is essential for the plaintiff

to offer evidence of what those damages are. *Collens* v. *New Canaan Water Co.,* supra, 488. In *Chykirda* v. *Yanush,* 131 Conn. 565, 567, 41 A.2d 449 (1945), we held that punitive damages are not properly recoverable in the absence of evidence as to the elements entering into their determination.

We also find that the plaintiff failed to prove malice as defined in the libel case of *Proto* v. *Bridgeport Herald Corporation,* 136 Conn. 557, 72 A.2d 820 (1950). *Proto* defines malice in fact as "not necessarily meaning hatred, spite or ill will against the plaintiff but as meaning that there must have been some improper or unjustifiable motive in publishing . . . ." Id., 564. Since the plaintiff did not prove a motivating intent or design on the part of the defendant to harm the plaintiff by its conduct, the plaintiff's claim for punitive damages must fail.

Furthermore, even if the evidence had revealed malice or reckless indifference on the part of the defendant, the plaintiff's claim will not succeed since he offered no evidence whatsoever as to the expenses of litigation. The only evidence on the issue of damages at trial came from the plaintiff's manager, Richard Ryan. Ryan explained in detail why the inclusion of Venturi's name and picture in the Savitt advertisement was worth $7500. The plaintiff mistakenly argues that this evidence on the subject of damages should be used to calculate punitive damages. Although this $7500 figure might have been used in order to prove compensatory damages, the paragraph in the original complaint which sought compensatory damages was deleted when the amended complaint was filed. The $7500 figure has no place in the formula for punitive damages as outlined in *Triangle Sheet Metal Works, Inc.* v. *Silver,* supra.

In view of our decision that the plaintiff failed to sustain the burden of proof relative to his claim under § 652C and to proffer evidence as to litigation expenses, we need not reach the claimed errors (4), (5), and (6) in this opinion. Accordingly, the trial court did not err in rendering judgment for the defendant.

There is no error.

In this opinion the other judges concurred.