[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE NO. 111
The plaintiff, a long-time employee of Yale University, brings this action against the Yale Corporation, and three supervisory employees thereof, seeking injunctive and monetary relief for damages allegedly suffered in connection with that employment relationship. The defendants have moved to strike five of the six counts contained in the complaint on the basis that they are insufficient as a matter of law.
First Count
In the first count of the complaint, the plaintiff alleges the existence of certain personnel and policy procedures as set forth in a series of documents. She alleges numerous policies and procedures which she claims the parties intended to become CT Page 4798 part of her employment contract and alleges violations of such policies and procedures in a number of respects.
The defendants move to strike count one on the basis that it contains nothing more than a general statement of University policies and does not allege any specific language from which the court could find the existence of a binding contract or intent on the defendant, Yale, to enter into such a contract.
In ruling on a motion to strike the court must take the facts to be those alleged in the complaint in the manner most favorable to the pleader. Norwich v. Silverberg, 200 Conn. 367,370 (1986). All well-pleaded facts and those necessarily inferred therefrom, are taken as admitted. Mead v. Burns,199 Conn. 651, 655 (1986).
It is the law of this State that statements in an employer's personnel manual, under appropriate circumstances, may give rise to an expressed or implied contract between employer and employee. Finley v. Aetna Life Casualty Co., 202 Conn. 190,198 (1987). "In the absence of `definitive contract language,' however, `the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties and an inference of fact.'" Finley v. Aetna Life Casualty, supra at p. 199.
Paragraphs 68 through 74 contain sufficient allegations of the existence of an implied contract to withstand a motion to strike. While the above paragraphs do not specify the exact language upon which the plaintiff relies, the lack of linguistic specificity does not warrant the granting of a motion to strike. D'Ulisse-Cupo v. Board of Directors of Notre Dame High School,202 Conn. 206, 220 (1987). The defendant, Yale, should be able to determine the exact document relied upon by the plaintiff and the specific language thereof, as to each allegation, through the discovery process.
To the extent that the defendant relies on Christensen v. Bic Corporation, 18 Conn. App. 451 (1989), the resolution of that case involved the court's determination that the evidence produced at trial did not support the allegations of the complaint and the issue at hand was not dealt with in the context of a motion to strike.
The motion to strike is therefore denied as to the first CT Page 4799 count of the complaint.
Third Count
The third count of the complaint alleges that the defendant, Yale, breached the implied convenant of good faith and fair dealing arising from the employment contract. The defendant's move to strike the third count on the ground that the plaintiff does not allege that the conduct of such defendant violated an important public policy. In making this claim the defendants rely on the holding of the Supreme Court in Magnan v. Anaconda Industries, Inc., 193 Conn. 558 (1984). The plaintiff counters this claim by pointing out that Anaconda involved a claim of wrongful termination of an employment contract and its holding must be so limited.
The issue then becomes whether the holding in Anaconda applies to a non-termination case such as the one at hand. It is the opinion of this court that it does not. The language of that decision clearly restricts its application to situations involving a claim of wrongful termination.
 While we see no reason to exempt employment contracts from the implication of a covenant of good faith and fair dealing in the contractual relationship, we do not believe that this principle should he applied to transform a contract of employment terminable at the will of either party into one terminable only at the will of the employee or for just cause. Anaconda at pp. 568, 569.
 Although we endorse the applicability of the good faith and fair dealing principle to employment contracts, its essence is the fulfillment of the reasonable expectations of the parties. Anaconda at p. 572.
The defendants' reliance on the holding in Anaconda is misplaced. The motion to strike the third count of the complaint is denied.
Fourth Count
The fourth count of the complaint alleges defamation against all defendants and alleges that false statements were made CT Page 4800 concerning the plaintiff and were made by the defendants outside of their duties and responsibilities as administrators and supervisors of the university. The defendants move to strike this count of the complaint for the reason that the plaintiff fails to allege "publication."
Essentially the defendants' claim is that there is no allegation that any defamatory statements were made by the defendants to anyone "outside of the corporate sphere." the defendants rely heavily on L. Cohen Co., Inc. v. Dun 
Bradstreet, Inc., 629 F. Sup. 1425 (D. Conn. 1986) which holds that dissemination of allegedly defamatory material among employees of a corporation does not constitute the publication of that material.
As the plaintiff points out, however, the Cohen case involved the dissemination of allegedly defamatory material only to those corporate employees whose job functions included the need to be aware of that information. Concededly, the holding in Cohen would appear to be broader than its facts in that respect. However, this court can find no valid reason to justify a holding that dissemination of defamatory material to one who has no business reason to receive it cannot be publication merely because that recipient is an employee of the same corporation as the defendant.
It would appear that the complaint, and specifically paragraph 15 thereof, when construed in a manner most favorable to the pleader encompasses allegations that information which the plaintiff claims to be defamatory was communicated to "others." Again in paragraph 68 the plaintiff alleges that the defendants "repeated, reported, and published defamatory statements. . ." In paragraph 69 the plaintiff alleges that such statements were "made outside the scope of the individual defendants' duties and responsibilities as administrators and supervisors for Defendant University and Library."
Certainly at the time of trial the plaintiff will have to prove such publication and to whom the allegedly defamatory material was communicated. Depending upon the plaintiff's proof, the defendants of course will have the opportunity at that time to raise as a defense lack of publication.
However, based upon the allegations of the fourth count of the complaint, taken as a whole and construed most favorably to CT Page 4801 the pleader, such allegations are not insufficient as a matter of law as to the issue of publication.
The defendants also raise a statute of limitations defense as to incidents occurring in 1975, 1986, and 1987 on the basis that they are beyond the two-year period set forth in Conn. Gen. Stat. 52-597. While the defendants' argument may have merit, the motion in this regard must fail on procedural grounds.
The defense of statute of limitations should be raised by special defense. See Conn. P. B. Sec. 164. A motion to strike is not the appropriate vehicle in which to raise the defense of statute of limitations which operates to bar a cause of action rather than to extinguish it. Dillon v. Minot, 17 Conn. Sup. 1,2 (1949); Cole v. Hawley 95 Conn. 587, 597 (1920). The defendants may at trial raise the statute of limitations as to conduct which they claim to be outside of the limitation period set forth in 52-597.
For the foregoing reasons, the motion to strike is denied as to the fourth count.
Fifth Count
The fifth count of the complaint purports to state a cause of action in invasion of privacy and false light. The defendants move to strike this count for the reason that the plaintiff has failed to allege the requisite "publicity" to maintain this cause of action.
Connecticut recognizes a cause of action for invasion of privacy and has adopted the definition and categories of invasion of privacy as set forth in 3 Restatement (Second), Torts Sec. 652A. See Goodrich v. Waterbury Republican-American, Inc.188 Conn. 107 (1982); Venturi v. Savitt, Inc., 191 Conn. 588
(1983); Jonap v. Silver, 1 Conn. App. 550 (1984). The comment to 3 Restatement (Second) Torts, Sec. 652D expands upon the term "publicity" as used not only in Sec. 652D but 652 as well which is "Publicity Placing Person in False Light":
 . . ."Publicity" as it is used in this Section differs from "publication" as that term is used. . .in connection with liability for defamation. "Publication" in that sense is a word of art, which includes any communication by the defendant to a CT Page 4802 third person. "Publicity" on the other hand, means that the matter is made public by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. . .Thus it is not an invasion of the right of privacy. . .to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.
The allegations of the fifth count of the complaint fall short of those necessary to state a cause of action for invasion of privacy. The plaintiff has not alleged facts which, if proven, would constitute "publicity" as that term is used in the Restatement and Connecticut case law.
Therefore, the motion to strike the fifth count of the complaint is granted.
Sixth Count
In the sixth count of the complaint the plaintiff alleges intentional infliction of emotional distress. The defendants move to strike this count of the complaint on the basis that the allegations thereof fall short of alleging the "extreme and outrageous" conduct necessary to maintain this cause of action.
In order to state a cause of action for intentional infliction of emotional distress the plaintiff must allege and prove: 1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was a likely result of his or her conduct; (2) the conduct was extreme and outrageous; (3) the defendant's conduct was the cause of the plaintiff's distress; and (4) the emotional distress plaintiff sustained was severe. Petyan v. Ellis, 200 Conn. 243, 253
(1986). It is the second requirement that the defendants claim is not sufficiently alleged.
The court has reviewed each of the nineteen paragraphs of the complaint upon which the plaintiff relies to plead extreme and outrageous conduct and agrees with the defendants that there are insufficient allegations to support that requirement. Whether conduct is to be considered "extreme and outrageous" in this context is for determination by the court in the first instance. Kirtner v. Nidec-Torin Corp., 622 F. Sup. 112, 114) (D.Conn. 1987). CT Page 4803
Restatement (Second) of Torts, 46 comment d. explains what is meant by extreme and outrageous conduct:
 It is not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
The allegations of the plaintiff pertain to statement concerning her level of job performance and her ability or inability to successfully interact with others in an employment setting. These allegations fall short of alleging "extreme and outrageous conduct." In Petyan v. Ellis, supra at p. 245, the defendant wrote that the plaintiff "was released from this employment for reasons of unsatisfactory performance and mainly for fraud and lying." The court found such statement not to be "extreme and outrageous" so as to support a cause of action for intentional infliction of emotional distress.
The motion to strike is granted as to the sixth count of the complaint.
In summary, the defendants' motion to strike is denied as to counts one, three, and four, and granted as to counts five and six.
Bruce W. Thompson, Judge