[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR PUNITIVE DAMAGES ANDATTORNEY'S FEES
This motion addresses the 10th count of the complaint alleging a CUTPA violation by the defendant Larsen. On this count the jury returned a verdict of $1.00. The plaintiff is seeking an award of both punitive damages and attorney's fees. Awards on both of these claims are discretionary with the Court. C.G.S. §§ 42-110g(a) and 42-110g(d).
 I
The standard for awarding punitive damages under CUTPA was established in Gargano v. Heyman, 203 Conn. 616 (1987).
 `"In order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights. Collens v. New Canaan Water Co., 155 Conn. 477, 489, 234 A.2d 825 (1967). In fact, the flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence. Triangle Sheet Metal Works, Inc. v. Silver, 154 Conn. 116, 128, 222 A.2d 220 (1966).' Venturi v. Savitt, Inc., 191 Conn. 588, 592, 468 A.2d 933 (1983)."
Id., at 622.
While the defendants conduct was found by the jury to violate CUTPA, the award of damages was only nominal. CT Page 5154
 "Nominal damages mean no damages. They exist only in name and not in amount." Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480, 504 (1995); citations omitted.
This Court heard the explanation of the defendant Larsen as to why he took the actions he did. Larsen also testified as to the events preceding his actions, such as the futile attempts to sell the business, all approved by principals of the plaintiff. The Court found Larsen to be a more credible witness than Mr. Zaniewski and believes his version of the events, including the discussions in January 1989. Larsen claimed that Zaniewski told him "You're out of business" on January 23rd. The plaintiff's financial adviser expressed his regrets and both he and the plaintiff participated in Larsen's efforts to save the jobs of his staff by approaching at least five real estate agencies in an attempt to sell the plaintiff corporation — unsuccessfully.
Prior to the preparation and mailing of the defendant's letter in March, salaries of sales personnel at the plaintiff agency had been eliminated, advertising had been drastically reduced, salaries of hourly staff had been cut, and it was the defendant's stated concern that customers were not being treated fairly. The circumstances were such that the conduct found to be unfair cannot also be characterized as a wanton violation or one committed with reckless indifference to the rights of others. In fact, a witness for the plaintiff who received the letter saw it positively and thought the plaintiff had made a good move in what he perceived as an affiliation with the Pearce Company.
Damages for CUTPA violations are also designed to punish and deter such future conduct. It is highly unlikely this defendant will ever be in a position where he is faced with a similar situation and will repeat his actions. And, as noted above, the Court does not feel that the defendant's conduct is of the outrageous type which warrants the imposition of punitive damages.
 II
— A —
In its verdict, the jury awarded the plaintiff $165.00 on one count and $6,000.00 on another. A nominal award of $1.00 was granted on the CUTPA count. Counsel has submitted bills for sums CT Page 5155 in excess of $200,000.00.
These bills represent the total litigation, including that against the defendant H. Pearce Company. Thus, the bills are not properly limited to the fees incurred in pursuing the claim against Larsen. The plaintiff offered to attempt such a reconstruction after that fact was noted and argued by the defendant. However, the state of the record is that the movant failed to present the evidence relevant to its actual claim, the cost of pursuit of its claim against Larsen.
The court finds that considering the legal and factual issues of this case, work for which the reasonable charge would be $9900.00 was required to achieve the results so achieved. In the absence of this evidence, this claim could be denied on this ground alone.
— B —
Section 42-110g(d) provides that in any CUTPA action, the court "may award . . . costs and reasonable attorney's fees based on the work reasonably performed by an attorney and not on the amount of recovery." (Emphasis added.)
In assuming the reasonableness of the attorney's fees claimed, courts have often adopted the standards set forth inJohnson v. Georgia Highway Express, Inc., 488 F.2d 714 (1974), a case arising under 42 U.S.C. § 1988. The factors of "reasonableness" identified in Johnson which are applicable in this context include the number of hours spent, the amount of time and staffing that would be adequate to pursue a case of this sort, and the difficulties of the case.
The fees sought include the efforts not only of trial counsel, but of two associates, one of whom was present throughout most of the trial. The movant also seeks compensation for the efforts of a paralegal.
This case was not so complex, either legally or factually, that it required so large a battery of legal expertise. The Court finds that the case was overstaffed and that the cost of such overstaffing cannot be characterized as "reasonable attorney's fees". Nor can it be said that all of the time spent was "work reasonably performed" within the meaning of the statute. CT Page 5156
CONCLUSION
The Johnson Court explained its guidelines in these words (at page 719):
 "To put these guidelines into perspective and as a caveat to their application, courts must remember that they do not have a mandate under Section 706(k) to make the prevailing counsel rich. Concomitantly, the Section should not be implemented in a manner to make the private attorney general's position so lucrative as to ridicule the public attorney general. The statute was not passed for the benefit of attorneys but to enable litigants to obtain competent counsel worthy of a contest with the caliber of counsel available to their opposition and to fairly place the economical burden of Title VII litigation. Adequate compensation is necessary, however, to enable an attorney to serve his client effectively and to preserve the integrity and independence of the profession. The guidelines contained herein are merely an attempt to assist in this balancing process."
Anthony V. DeMayo State Trial Referee