[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 13506
These actions pertain to a certain easement located on property on the south side of Jones Hollow Road in the town of Marlborough, Connecticut.
The first of the actions was brought by Noel Cyr, the owner of the property, against Jerome Dietrich the holder of the easement, claiming that Dietrich had interfered with his contractual rights by informing a prospective purchaser that there existed a dispute concerning the location of the easement. The other count against Dietrich was in breach of contract, claiming, that he, Cyr, and Dietrich had a contract to settle their differences as to the easement location and that Dietrich had breached the contract by refusing to settle the controversy.
By memorandum of decision dated November 27, 1996, filed November 29, 1996 this court, the undersigned Sullivan, J. found for the defendant on each of these claims.
The defendant Dietrich filed two counterclaims in the action. The first count sought damages against Cyr for obstructing the right of way by placement thereon of a stone wall, and further that Cyr destroyed the gate which the defendant had placed across the entrance to the right of way as required by the easement grant. The second count of the counterclaim, incorporating the first count, alleges that the aforesaid activity was done intentionally and maliciously to deprive the defendant of his easement rights. The evidence does not prove who destroyed the gate.
The court determined, in its memorandum of decision of November 27, 1996, that the evidence submitted by the parties as concerns the boundaries of the easement, was confused, confusing and self contradictory, such that a determination of the counterclaims could not be made without determining the east boundary of the easement, as it appears that this east boundary was "lost and uncertain". This court consequently deferred a determination of the counterclaims until that boundary could be determined by a proper action to determine that boundary which would determine the actual location of the entire easement, per the advise of Carvahlo v. Kellogg, 3 Conn. Sup. 100, 101 (1935). The metes and bounds of the entire easement commence and end with the east boundary, the "town line", and hence the easement area shifts to the east or to the west depending on the location of CT Page 13507 the east boundary.
 II
Following that suggestion Jerome Dietrich, the holder of the easement, brought the second captioned action on January 14, 1997. This action is against James R. and Alice C. Branco, who are the present owners of the servient estate, formerly owned by Cyr. The plaintiff also joined in the action Foothills Farm, Inc. the owner of the property which abuts the now Branco property on the east.
The plaintiff Jerome Deitrich's right of way is bounded and described as follows:
"NOW THIS INDENTURE WITNESSETH that in consideration of ONE DOLLAR ($1.00) and other valuable considerations paid by the Grantee to the Grantors, the Grantors hereby grant unto the Grantee, his heirs, successors and assigns, full and free right and authority for ingress and egress, on foot and motor vehicle and for an electrical utility line as close to the town line as possible to the following described parcel of land, to wit:
 Beginning at a point in the town line between Hebron and Marlborough which is the Northwest corner of a parcel of land conveyed to said Dietrich by Karl H. Links; thence running south 6° — 21' west in said town line 16' to a point, thence running north 83° — 39' West 16' to a point, thence running North 6° — 21' Est 142' to a point in a stone wall on the Southerly side of Murphy Road; thence running North 36° — 49' East along the Southeasterly side of Murphy Road 31.5' to a point in the said town line between Hebron and Marlborough, thence running south 6° — 21' West in said town line 16' to a point of beginning.
The Grantee hereby covenants with the Grantors their heirs, successors and assigns that he and his heirs, successors or assigns will comply with the following conditions:
 1. The Grantee agrees to construct on said right-of-way a road and to maintain the same in reasonably safe condition, to remove all brush and trees except "line trees" and maintain said right-of-way free of brush. All cut material to be immediately removed. CT Page 13508
 2. The Grantee agrees that no vehicles belonging to his heirs, successors or assigns shall be parked on any part of said right-of-way at any time.
 3. The Grantee agrees to carry public liability insurance on said right-of-way.
 4. The Grantee agrees to maintain a gateway and gate at the northwesterly corner of his property and at the highway entrance and properly marked "Private Road".
 IN WITNESS WHEREOF, the Grantors have hereunto set their hand and seal this 11th day of July, 1985."
This right of way indenture runs from Richard D. DeGemmis and Robin C. DeGemmis to the plaintiff, Jerome Dietrich dated July 11, 1985. The description thereof is identical to the indenture of July 11, 1958 from Charles Keleti, a predecessor in title of the defendants Cyr and Branco, granting to Leslie Dietrich the plaintiff's father, and predecessor, the same right of way over the same property.
By inadvertence the 1958 indenture was not filed on the land records. However, the map dated April 1958, revised to July 11, 1958 by one George Burke, P.E., depicting and setting forth the right of way, was filed on the land records. The indenture from DeGemmis to Dietrich in 1985 was for the purpose of confirming, reaffirming and recording the easement grant of July 11, 1958. The 1985 indenture was filed on the land records on July 19, 1985.
The difficulty with the 1958 indenture is that it is not clear from any of the records in the towns as to precisely where was the town line between Hebron and Marlborough in 1958. This is significant to the issues in this case because the entire eastern boundary of the easement is described as the "town line between Hebron and Marlborough."
It was thought by the court in the first phase of the Cyr v.Sheppard trial, that there was a clear and delineated boundary between the two towns in 1958, and hence that further information would be required, by a further proceeding, to locate a then existing clear boundary.
The court concludes, on the basis of the evidence presented CT Page 13509 in this case, that neither of the towns knew precisely where the boundary was located, in 1958. Several judicial decisions, called to the court's attention by the briefs of the parties submitted in August 1999, specifically focus on the uncertainty of the Hebron-Marlborough town line. "The boundary line between Hebron and Marlborough was first established by the act incorporating the Town of Marlborough in 1803 . . . The trial court found that there was no further official designation of the location of the town boundary until 1981, when a map locating the town line was filed and recorded in the land records of Marlborough."Romanowski v. Foley, 10 Conn. App. 80, 81 (1987).
An even more poignant description of the problem appears in a 1990 Superior Court case.
 "As is eminently clear from the evidence of all parties, the problem, and the reason for this property dispute, is the simple fact that the town line between Hebron and Marlborough, at least as fixed in 1983 by a survey done by one Hayes, is not where the parties thought that the line was, and indeed the line as presently constituted between the two towns runs through the middle of plaintiffs' home . . . The difficulty is, quite simply, that the `assumed town line is not now and never was the town line between Hebron and Marlborough."
 Ely v. Gallagher, No. CV 88 — 0340356 Judicial District of Hartford/New Britain, 11/21/90
This court does not establish or delineate the "town boundary" for any purpose other than to physically locate the easement for the parties who are before this court. ". . . the legislature has delegated authority for establishing such boundary to the towns, cities and boroughs themselves. General Statutes § 7-113 directs towns to mark their boundaries. General Statute § 7-115 provides for a procedure in the event that adjoining towns dispute the boundary." Romanowski v. Foley,10 Conn. App. 80, 84 (1987).
This court lacks subject matter jurisdiction to determine the placement of a town boundary. Romanowski, supra, p. 85. However the court is enabled to determine what actual ground, earth, the parties intended to convey and receive by use of the term "town line". CT Page 13510
The two towns, in 1981, apparently commissioned Frederick M. Hayes, Land Surveyor, to map the town line. By map dated November 17, 1981 Mr. Hayes sets out the boundary as between the towns, running from south-east to north-west. The proferred significance of the map, Plaintiff's Exhibit 2, for whatever guidance it may be, is that the map establishes a southerly terminus as "42' oak inscribed TL". Both of the engineers who testified in this case have seen the oak tree with the "TL" marking on it. (TL obviously means town line). The map sets forth the fact that the selectmen of Marlborough accepted the map on February 1, 1981 and Hebron accepted it on December 7, 1981, by designation captioned "Town Line Acceptance" on said map.
Mr. Dietrich's expert, engineer and land surveyor J. Robert Pfanner accepts the 42" oak tree, inscribed "T.L." as the southerly terminus of the town line. (Plaintiff's Exhibit 4). Conversely, the defendants Cyr and Branco accept the map of Richard F. Mihok, PE, consulting engineer, who utilizes a concrete monument 69.39 southeast of the oak tree as the southerly terminus of the town line (Defendant's Exhibit E). Both of the surveyor-engineers use a pile of rocks as the northerly terminus, which terminus is north of Murphy Road, and north of the premises in question.
The map which was filed on the land records on August 7, 1958, revised to July 11, 1958 captioned "Map of Property of Leslie Dietrich, April 1958 revised July 11, 1958", defendant's exhibit A, does not set a southerly terminal post for the town line, as it goes only to the southerly property line of Mr. Dietrich. It does, however, specify the east boundary of the easement as the "town line."
The dilemma presented by the maps is obvious. It one accepts the Pfanner map the town line, from it southerly terminus, starts 69.39 feet northwest and remains, in decreasing distances, west of the line of the Mihok map throughout its south to north course. Similarly, the Mihok map would start southeast of the Pfanner map and remain, in decreasing distances, east of the Pfanner map. The Mihok map would place a 36 inch oak tree and a 25 inch hickory tree substantially into the paths of the 16 foot wide easement. Conversely, the Pfanner map, plaintiff Dietrich' s Exhibits in both cases, would place the 36 inch oak tree and the 18 inch hickory tree east of and out of the right of way, giving an unencumbered sixteen feet to the right of way along its entire length. CT Page 13511
As aforesaid, the right of way was established in 1958. It was not until 1981, some twenty three years later, that the towns decided to make definite the boundary, reflected by Mr. Hayes map. This the town properly accomplished, per General Statutes § 7-113 to § 7-115. The court has, however, no evidence before it to know of what criteria was utilized by Mr. Hayes. Hence the court cannot utilize Mr. Hayes map as a factual delineation of the location of the line in 1958. General Statutes § 7-115 states . . . "the line so fixed and established shallthereafter be the true division line between them . . .". Hence an exact legal record location, by metes and bounds, of the town line in 1958 cannot be determined by using the 1981 acceptance of the map of Hayes by the towns of Hebron and Marlborough as if it were the town line in 1958.
 III Settling Easement Rights
The plaintiff Dietrich claims in this action, Dietrich v.Branco that there be a "settling of title," and a "order for possession of the Right of Way."
This court concludes that there is an ambiguity in the deeds establishing the easement, more particularly the east boundary of the easement, the "town line", as aforesaid. "There was, therefore, a latent ambiguity in the disruption of the line. The latest ambiguity thus disclosed by parol could be removed by parol." Apostles of the Sacred Heart v. Curott, 187 Conn. 591,598 (1982). Where there is a latent ambiguity in the deed of boundary line the question is one of fact for the trial court.Christen v. Ruppe, 131 Conn. 150, 152 (1944); Lake GardaImprovement Assn. v. Battistoni, 160 Conn. 503, 513 (1971); F. AK, Inc. v. Sleeper, 161 Conn. 505, 511 (1971). Young Men'sChristian Association v. Zemel Bros., Inc., 171 Conn. 310, 312
(1976).
The following facts are found. Mr. Jerome Dietrich, the present plaintiff and son of the original grantee of the easement, clearly remembers the hickory tree and the oak tree as far back as 1958. They never traveled to the left of the trees they always traveled to the right (west). Mr. Cyr put up the wall which precipitated this litigation. Mr. Dietrich goes to the property as much as twenty times per year, for recreational CT Page 13512 purposes. Mr. Dietrich and his family have used the property continuously since 1958. The access to Mr. Dietrich's land is by use of this sixteen foot wide easement. There were wheel ruts or tracks to the right (west) of these trees, the oak tree and the hickory tree, reflecting the consistent use of the area to the right of the trees as the easement location. There was a gate at the north terminus of this track, in accordance with Dietrich's obligation #4 in the grant of easement. He, Jerome Dietrich, had replaced the gate with the help of boy scouts. The gate was removed by someone, unidentified, subsequent to Mr. Cyr's purchase of the property.
The court further finds that to the left, east, of the large oak tree there is a ledge or large rock outcropping which would have made it practically impossible for a vehicle to pass between the oak tree and the ledge east of and adjacent to the tree. Mr. Edward Foote, of Foothills Farm, Inc., the east abutter claims that the ledge is within his property line. (Mr. Foote also remembers the wheel tracks to the west of the oak and hickory trees).
The court takes judicial notice of the fact that motor vehicles cannot drive straight through a 36 inch thick oak tree, or through an 18 inch thick hickory tree.
The neighbor to the east, Mr. Foote, testified, and the court finds that he, 83 years old and a graduate engineer from the University of Connecticut, has lived there all his life, as did his father and grandfather. He farmed the land all of his life. In the Spring they would mend fences. They strung barbed wire along the tree line to keep the animals in, and to keep the neighbor's animals in. He considered the trees to be his property line. Hence he does not consider the area to the west of the trees to be his property. The wire fence is no longer there, but half the large trees are still there.
The 1958 easement map shows several fences adjacent to the designated "town line". The "town line" on the map bisects each of the fences, which fences appear to enclose a dirt path. The court determines that the wire fences, as displayed in defendant's Exhibit A are not indicative of the location of the east boundary of the easement. They are bisected by what was designated as the "town line" on the 1958 map and do not relate to the single animal-restraint fence described by Mr. Foote. CT Page 13513
Lastly, the deed of easement requires the grantee to remove all brush and trees except "line trees." In reviewing the various maps submitted by the engineer-surveyors the only two trees which appear to be of sufficient age and maturity to have been significant trees in 1958, as concerns the easement area, would be the 36 inch oak tree, and the hickory tree, referred to by Mr. Mihok as 25 inches and by Mr. Pfanner as 18 inches. Mr. Pfanner also located a 36" stump about two thirds of the way down the easement, on the east. The line which Mr. Pfanner plots intersects about the west one third of the stump, and touches on the west side of the hickory tree. It misses the 36 inch oak tree, the middle and standing tree, by about 24 inches, placing that oak tree slightly east of the plotted town line. As aforesaid, the plaintiff Mr. Dietrich and his predecessor, his father and family, always proceeded to the west of the standing oak tree and the hickory tree.
It appears clear that, as this is an easement for vehicular travel, sixteen feet of width would be barely enough width for two vehicles to pass each other, giving adequate room between them, and on each side and so that the vehicles could remain contained within the easement. The Court does not infer, nor is there evidence that the parties intended to grant less than a sixteen foot wide usable passageway. If the oak tree and the hickory tree were within the easement the usable widths of the easement would be substantially reduced and impractical or impossible for opposing vehicles to pass each other. Further cutting down the only trees which appear to be line trees, in this area, to gain a sixteen foot width would be in violation of condition one of the grant of easement.
"Ambiguous language in a grant is ordinarily construed against the grantor and in favor of the grantee. . . . Further where boundaries are ambiguous the grantee may adopt that boundary most favorable to him." Lake Garda Improvement Assn. v.Battistoni, 160 Conn. 503, 514 (1971). This proposition specifically applies to . . . "an instrument creating an easement. . ." Gayer v. Carlson, 146 Conn. 288, 298 (1959).
The court finds, on the evidence, in interpreting the grant of easement executed in 1958 and reaffirmed thereafter in 1985, that the true east boundary of the easement, described by the grant of easement as "the town line between Hebron and Marlborough" is as set forth in the map entitled "Plan Showing 16' Right of Way belonging to Jerome F. Dietrich, Jones Hollow CT Page 13514 Road Murphy Road, Marlborough, Connecticut June 19, 1995. J. Robert Pfanner Associates, P.E. which map is entered into evidence as a Deitrich Exhibit in both suits. The court determines that the metes and bounds of the entire easement as set forth on this map are true and accurate.
The court therefore settles the title to the easement precisely as displayed on that map, as prayed by the plaintiff Jerome Dietrich.
The defendant Foothills Farm, Inc. was served process and was represented by counsel in this matter, and produced evidence and testimony as concerns the background and history of the use of the easement by the plaintiff and his predecessor. Mr. Foote, the officer of Foothills Farm, Inc. and lifelong neighbor to the east does not claim, nor would the evidence support a claim that his property extends to the west of oak and hickory trees that are the aforesaid trees on the east of the easement. Hence the location of the east line of the easement is binding upon the defendant Foothills Farm, Inc.
 IV Easement by Prescription
The plaintiff Jerome Dietrich, in the second count of the complaint claims the right to said right of way by virtue of prescription.
General Statute § 47-37 provides: "No person may acquire a right of way over the land of another, by the adverse use or enjoyment thereof, unless the use has been continued uninterrupted for fifteen years."
". . . a party claiming to have acquired an easement by prescription must demonstrate that the use has been open, visible, continuous and uninterrupted for fifteen years and made under a claim of right. . . . Use made under a claim of right means use that is made `without recognition of the right of the owner of the servient tenement.'" Grandall v. Gould,244 Conn. 583, 590 (1998). It does not even necessarily require that the use be made under a belief or a claim that it is legally justified. Grandall, supra, p. 591.
The only time that there had been any controversy about CT Page 13515 whether there was a right of way was by virtue of a misunderstanding of Mrs. Keleti, a defendant's predecessor, in 1976. Mrs. Keleti did not remember that her husband Charles Keleti had granted an easement to Leslie Dietrich years ago. This was promptly cleared up by producing the easement document. Other than that, the court is aware of no one else who questioned the easement or its location until the appearance of Mr. Cyr, in the Fall of 1991, when he constructed a stone wall which substantially interfered with the customary passage.
On the basis of the facts found in the first part of this decision, the court finds that the plaintiff Jerome Dietrich and his predecessor, his father Leslie Dietrich possessed said right of way open, continuous, visible and uninterrupted, under a claim of right since 1958, i.e. for thirty-three years, until such time as Mr. Cyr unilaterally blocked off the right of way. Further, the court finds that the area utilized by the plaintiff and his predecessor for the purposes of ingress and egress is the specific area set forth in the Pfanner map of June 19, 1995, previously determined in Part III hereof as the actual area of the easement.
The court determines that even if the deed of easement would have been incapable of interpretation, which it is not, yet the plaintiff would have and did under the facts of this case, gain the right to this easement as delineated by the Pfanner map by adverse use, per General Statutes § 47-37. It is noted that both James Branco and Alice Branco, to the west of the easement, and Foothills Farm, Inc. to the east of the easement were parties and were heard at this trial, and that the defendants Cyr were fully heard in the 1996 proceeding.
 V
The court attaches to this decision the aforementioned Pfanner Associates map of June 19, 1995, directing that a copy thereof be filed on the land records of the town of Marlborough, with proper recording, so as to give all interested parties now and hereafter proper notice of the location of said easement.
 VI Injunction
The defendants in the Cyr v. Shepard case, Noel Cyr and CT Page 13516 Annette Cyr placed a stone wall along the north entrance to the right of way, and placed a stone wall down the interior of the right of way, thereby effectively intruding onto and trespassing upon the right of way. The defendants Noel Cyr and Annette Cyr failed to appear for this 1999 trial and hence were defaulted.
As concerns the defendants James and Alice Branco, they are the owners of the servient estate, purchased from the defendants Cyr. As such they are legally responsible for those conditions which burden the dominant estate, i.e. the easement of the plaintiff Jerome Dietrich. See Corvo v. Waterbury, 141 Conn. 719,723, 725 (1954). Crescent Beach Assn. v. East Lyme, 170 Conn. 66,70 (1976). Further, the deed from Cyr to Dietrich gives Dietrich specific notice of this easement.
The court hereby orders that the defendants James and Alice Bronco and the plaintiffs (defendants on counterclaim) Noel Cyr and Annette Cyr remove the stone walls at their expense so as to eliminate the intrusion of the stone walls into and across the easement, the boundaries of which have been hereto delineated by this court. The court orders that said removal be accomplished no later than sixty days after the date of entry of this judgment. The orders as against Mr. Mrs. Cyr and Mr. Mrs. Branco are joint and several, each being responsible for full compliance with this order. The court further enjoins the defendants from any further obstruction of the easement.
Nothing contained in this order shall prevent Mr. Mrs. Branco from moving the wall onto their own unencumbered property, if they choose to take advantage of the aesthetics of such a stone wall. The estimated costs of moving the wall, given at trial, merely to carry it away was $880.00. The court does not deal with damages for Mr. Dietrich to remove the wall, as the court has ordered that it be accomplished by the adverse parties. There is no evidence to indicate that Jerome Dietrich has suffered actual measurable monetary damages as he has been able to wind his way around a break in the wall, albeit in an awkward and legally unacceptable fashion.
 VII Punitive Damages
The plaintiff seeks punitive damages against Noel Cyr and Annette Cyr. The Cyr's have apparently moved out of state and did CT Page 13517 not appear for trial. The Dietrich counterclaim in the Cyr case states that the erection of the wall was done intentionally and maliciously to deprive Dietrich of his easement rights.
Punitive damages may be awarded where the activity demonstrates "a reckless indifference to the rights of others or an intentional and wanton violation of these rights." In fact the flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence." Venturi v. Savitt, Inc.,191 Conn. 588, 592 (1983).
The evidence demonstrates that Mr. Cyr constructed the wall in accordance with the survey prepared by the engineer Mr. Mihok, who installed iron pins in the ground. (Plaintiff Cyr's Exhibit 8, letter of December 17, 1991.) Mr. Dietrich seemed initially to agree with that location for the right of way. (Plaintiff Cyr's Exhibit 9, letter of January 3, 1992.) It appeared to Mr. Cyr that there was an agreement (Plaintiff Cyr's Exhibit 11, letter January 27, 1992). By February 3, 1992 discussions broke down, Mr. Cyr believing that Mr. Dietrich was trying to evade what appeared to be an agreement to accept Mr. Mihok's understanding of the location of the easement.
The Court finds that even though Mr. Cyr was in error as to the location of the easement, he was in fact relying upon the advice of a professional engineer, and of the apparent willingness of Mr. Dietrich to accept that delineation of the location of the easement. This falls far short of the type of conduct and motivation articulated in Venturi v. Savitt, Inc. The court denies the claim of relief for punitive damages, which in this State are attorney fees and costs of suit plus taxable costs. Venturi v. Savitt, supra.
This long, involved and expensive litigation was precipitated by both the original grantor and the grantee, in 1958, failing to set monuments on the land to clearly delineate by visible monuments the location of the easement. The court does not order that either of the parties set monuments. However, it is obvious that it is in the best interest of all parties that they should cooperate in such an endeavor as to preclude a recurrence of these problems.
THE PFANNER MAP IS ATTACHED TO THE ORIGINAL DECISION FILED WITH THE COURT. CT Page 13518
L. P. Sullivan, J.