[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
After a jury verdict rendered in favor of the defendant, James C. Spencer, Jr., M.D., the plaintiff, Kathy L. Starratt, filed a timely motion to set aside the verdict and a motion for a new trial. Both motions set forth as grounds that the court erred (1) in admitting certain testimony of Dr. Jerome Schnitt because he had not been properly disclosed as an expert, (2) in granting defendant's motion in limine prohibiting plaintiff from offering evidence of defendant's counsel's efforts to interfere with the conducting of the trial, (3) in refusing to instruct the jury that publication of plaintiffs private information could constitute an invasion of plaintiffs privacy rights. The plaintiff also sets forth as a ground of her motion that the jury's verdicts on the "conflict of interest issues" are against the weight of the evidence.
 I.
The plaintiff first claims that the court erred in admitting certain testimony of Dr. Jerome Schnitt because he had not been properly disclosed as an expert by the defendant. Dr. Schnitt is a clinical psychiatrist experienced in and familiar with the ethical obligations of internists. The plaintiff claims error because it was not disclosed that he would testify as to the ethical issue raised concerning the defendant Dr. Spencer's asking the plaintiff to obtain a certain document from her employer's files which would indicate whether or not her employer was still writing insurance business with a Dr. Neuberger, a former associate of the defendant.
Dr. Schnitt was disclosed as an expert on September 25, 2000. Although the disclosure revealed that the doctor would testify concerning the nature of medical communications and the standards of disclosures by internists, there was no specific disclosure concerning the plaintiffs claim that asking her to obtain the document for the defendant was an CT Page 6867 improper manipulation or exploiting of the plaintiff for the defendant's benefit. (Hereinafter referred to as the "document issue") Nevertheless, the deposition of Dr. Schnitt was taken by the plaintiff on June 4, 2001, during which plaintiff's counsel inquired at some length about Dr. Schnitt's views concerning the document issue. Deposition of Jerome M. Schnitt, M.D., June 4, 2001, pp. 88 — 95. In spite of objections by the defendant at the deposition, the plaintiff had every opportunity to explore this issue to the fullest with Dr. Schnitt. This is so even though the plaintiff had not, as of the day of this deposition, specifically alleged and described the conduct of Dr. Spencer concerning the document issue.
In point of fact, it was on the day after Dr. Schnitt's deposition that the plaintiff for the first time alleged that the defendant misused the plaintiffs confidential information "to induce plaintiff to provide him with evidence from her employer's business records of her employers continued business dealings with Dr. Neuberger which he could then use to cause plaintiffs employer to cease his business dealings with Dr. Neuberger." Revised complaint, June 5, 2001, paragraph 6.
The plaintiff, like the defendant, produced a psychiatrist, Dr. Howard Zonana, to testify concerning confidentiality of patient's disclosure. By supplemental disclosure dated September 15, 2000, the plaintiff named Dr. Zonana as the expert who would also testify concerning the document issue. At the deposition of Dr. Zonana, however, he gave no opinions concerning the document issue, but stated that all his opinions on the case would be given in answer to hypothetical questions to be asked him by the plaintiff at the time of the trial of the case.
It may be noted that the defendant filed a motion and then a supplemental motion to preclude Dr. Zonana, plaintiffs expert. The plaintiff did not file a motion to preclude Dr. Schnitt on the document issue, although she objected to his testimony on that issue at trial.
It is axiomatic that the purpose of disclosure and discovery is that each party would be apprised of the nature of the adverse party's case, and thus better prepare for it. "The rules of discovery are designed to make a trial less a game of blind man's [buff] and more a fair contest with the basic issues and facts disclosed to the fullest [practicable] extent." (Citations omitted; internal quotation marks omitted) Sturdivantv. Yale-New Haven Hospital, 2 Conn. App. 103, 106, 476 A.2d 1074 (1984).
The decision on whether to exclude evidence not disclosed rests within the sound discretion of the court. Filisko v. Bridgeport Hydraulic Co.,176 Conn. 33, 40, 404 A.2d 889 (1978); Sturdivant v. Yale-New HavenHospital, supra, 2 Conn. App. 107, 108. In this case, both counsel found CT Page 6868 themselves somewhat at a disadvantage concerning expert testimony on the document issue at the time of trial. The defendant had not properly disclosed his expert as to the subject matter pursuant to P.B. §13-4, but the plaintiff deposed that expert on the issue and had ample opportunity to develop his opinions adequately. On the other hand, the plaintiff did disclose his expert properly, but at his deposition, the expert forestalled answering questions on his opinions of Dr. Spencer's conduct.
Nevertheless, both experts were allowed to testify at trial on the document issue. Dr. Zonana testified in the plaintiffs case and thereafter, the court overruled the plaintiffs objections to Dr. Schnitt's testimony on that issue in the defendant's case. Permitting Dr. Schnitt, defendant's expert, to testify over plaintiffs objection was an exercise of discretion which, under the circumstances presented and hereinabove described, was fair and equitable and not unduly prejudicial. So exercised, the court believes its sound discretion was not abused.
 II.
The plaintiff next claims that the court erred in granting defendant's motion in limine prohibiting the plaintiff from offering evidence of defendant's counsel's efforts to interfere with the conduct of the trial. Specifically, the plaintiff claims that defendant's lawyer attempted to coerce a witness into refusing to testify or to testify falsely (i) by threatening to bring a baseless lawsuit against the witness, (ii) by improperly communicating with the witness whom he knew to be represented by counsel, through a friend of the witness, in order to cause the witness to bring an injunction action to prevent the plaintiff from prosecuting this case.
The court prohibited this rather convoluted evidence, based on the Connecticut Code of Evidence, Section 4-3, because the court found that the probative value of the evidence offered was outweighed by its prejudicial effect. The court also found that it would cause confusion of the issues for the jury as well as undue delay. On the other hand, the court recognized that evidence of conduct which amounts to obstruction of justice is admissible against a party as an admission of the weakness of its case.
The plaintiff claimed that the conduct of the defendant's lawyer violated the Code of Professional Responsibility, and planned to present witnesses to testify as to his conduct. Defendant's counsel denied that he threatened the witness with a suit as well as denying any ethical violations, and it became clear that the door would be opened for CT Page 6869 extensive evidence on both sides.
In addition, the imminent injunction action was not to be the first injunction action commenced by this witness against the plaintiff, but the second. It was also evident by a reading of the transcript of the proceeding before Judge Mintz on the second injunction action that counsel for the witness had a bona fide belief that the plaintiff's action against the defendant should be enjoined in part because of a prior settlement agreement between the witness and the plaintiff. Further, the evidence of what defendant's counsel said to the witness through the mutual friend consisted largely of the hearsay testimony of the witness.
The court envisioned a protracted distraction from the merits of the case if all of these contested charges were allowed, with very little probative value, but with a goodly amount of confusion for the jury. In the end, the witness in fact testified with no evidence that his testimony was influenced by any threats made by defendant's counsel against him.[1] Furthermore, the transcript of the hearing on the injunction shows that there were indeed disputes between counsel for the witness and counsel for the plaintiff which needed, and received, clarification as a result of the injunction action.
For the foregoing reasons, the court did not err in granting the defendant's motion in limine.
 III.
The plaintiff next claims that the court erred in refusing to instruct the jury that publication of plaintiffs private information could cause an invasion of plaintiffs privacy rights. The court charged the jury by explaining that the principle of invasion of privacy applicable to the facts of this case involve an intrusion upon the plaintiff's solitude or seclusion.[2] The plaintiff requested a further charge that one who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of privacy if the matter publicized is of a kind that would be highly offensive to a reasonable person and is not a legitimate concern to the public"[3] The plaintiff claims error in the court's failure to give this portion of her request to charge.
There was no evidence in this case that the defendant had given publicity to the private life of the plaintiff to any person other than Thomas McKernan, the plaintiffs employer. The Connecticut Supreme Court has described one of the four types of invasion of privacy as "(3) Publicity, of a highly objectionable kind, given to private information about the plaintiff even though it is true and no action would lie for CT Page 6870 defamation." Venturi v. Savitt, Inc., 199 Conn. 588, 591 n. 1, 468 A.2d 933
(1983). Restatement of Torts, § 652D, comment a, enlightens us as to the meaning of publicity in this context.
"A. Publicity. The form of invasion of the right of privacy covered in this Section depends upon publicity given to the private life of the individual. `Publicity,' as it is used in this Section, differs from `publication,' as that term is used in § 577 in connection with liability for defamation. `Publication' in that sense, is a word of art, which includes any communication by the defendant to a third person. `Publicity,' on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches, or is sure to reach, the public." Restatement 2d Torts, § 652D Comment a.
The court is unaware, and counsel has not furnished, any Connecticut case which holds to the contrary. In one superior court case, the attorney trial referee found that where the defendants did not divulge information concerning the private psychiatric notes about the plaintiff to the general public, there had not been an invasion of privacy. The judgment of the trial court in favor of the defendants in accordance with the report of the attorney trial referee was affirmed by the Appellate Court. Tarka v. Filipovic, 45 Conn. App. 46, 694 A.2d 824, cert. denied,242 Conn. 903, 697 A.2d 363 (1997).
The plaintiff claims that there is an exception to this rule, and publicity to a single person can be actionable invasion of privacy if it is highly offensive to a reasonable person where the plaintiff and the recipient of the information have a special relationship. However, the plaintiff concedes that there is no Connecticut authority espousing this principle.
Furthermore, the charge given by the court is broader and more favorable to the plaintiff than the "publicity" charge requested by the plaintiff. The court charged in part, "[T]hus, one who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person. A claim for unreasonable intrusion does not depend upon any publicity given to the person whose interest is invaded or to her affairs. It consists solely of an intentional interference with her interests in solitude or seclusion either as to her person or as to her private affairs or concerns of the kind that would be CT Page 6871 highly offensive to a reasonable person. The determination of whether an intrusion is "highly offensive to a reasonable person' is a question of fact for you, the jury, to decide under all of the circumstances present in this case." In this case, the jury was instructed, in deciding the question of whether the intrusion would be "highly offensive to a reasonable person," to take into consideration "all of the circumstances present in this case". This broad charge would subsume any charge regarding a special relationship between the plaintiff and the recipient of the private information, even if that were the law.
Finally, the plaintiff did not request a specific charge that publicity to one person could constitute an invasion of privacy if there were a special relationship, but took exception only to the fact that the court had not charged on her requests to charge numbers 2 and 6-8. Plaintiffs reference in para. 8 to "identity of the person to whom he disclosed it" was clearly covered by the court's charge that the jury should consider "all of the circumstances present in this case" in determining, as a question of fact, whether the intrusion was "highly offensive to a reasonable person."
For the above reasons, the court did not commit error in its charge to the jury.
 IV.
The plaintiff seeks to set aside the jury's verdicts on the "conflict of interest issues" because they are against the weight of the evidence. She does not specifically suggest which counts of the complaint or conduct of the defendant fall under the "conflict of interest issues." However, in her memorandum of law in support of her motion to set aside, the plaintiff limits her claim of jury error to its treatment of the evidence as to the defendant's solicitation of the plaintiff to obtain from her employer's file the confidential document referred to in § I. of this decision. The plaintiff claims that the undisputed evidence proved that the defendant did in fact ask the plaintiff to obtain such a document, knowing that it was a confidential document and that the employer would be upset if he learned the plaintiff had taken a copy. Dr. Zonana, the plaintiffs expert, testified that this conduct of the defendant was a breach of the standard of care, whether or not the defendant divulged the document to the employer before or after the plaintiff left his employ. Indeed, the plaintiff now argues that the conduct violated the standard of care whether or not the defendant ever disclosed it to the employer at all, either before or after the employment of the plaintiff had ended. However, both the defendant, Dr. Spencer, and Dr. Schnitt, defendant's expert, testified that it would not breach the standard of care if the document had not been shared with the CT Page 6872 employer while the plaintiff was still employed by him. "[T]he jury is free to accept or reject each expert's opinion in whole or in part."Hayes v. Decker, 56 Conn. App. 293, 302, 784 A.2d 417 (2001). "It is well settled that the trier of fact can disbelieve any or all of the evidence proffered . . . including expert testimony, and construe such evidence in a manner different from the parties' assertions." Id., 302. Therefore, it was reasonable for the jury to conclude that the plaintiff had not proven that the defendant's conduct concerning the "document issue" breached the applicable standard of care.
Furthermore, with regard to this issue, there was no or little evidence demonstrating that the plaintiff suffered any harm as a result of the defendant's admitted conduct.
For the foregoing reasons, the plaintiffs motions to set aside the verdict and for a new trial are denied.
So Ordered.
 ___________________ D'ANDREA, J.T.R.